[Crim. No. 16071. Second Dist., Div. Two. Jan. 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LESLIE WEBSTER, Defendant and Appellant.

**COUNSEL**

Samuel Frizell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—This is an appeal from a judgment of conviction of first degree murder following a retrial. (*People* v. *Webster*, 254 Cal.App.2d 743 [62 Cal.Rptr. 476].) The sordid facts surrounding the rape-murder of Diane Harley, appellant's victim, are detailed in the decision of the Court of Appeal reversing appellant's first conviction under the compulsion of *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. (*People* v. *Webster, supra,* pp. 745-751). We set forth only facts relevant to the contentions raised in this appeal.

Appellant first contends that a statement made by him in March or April 1964, to Mr. Albert Ng, was erroneously admitted on retrial and created reversible error per se. Mr. Ng was a corrections counsellor employed by the State Department of Corrections and, at the time the statement in question was made, failed to administer the admonition required by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Mr. Ng related the statement as follows:

"Q. BY MR. TRAMMELL: Would you relate to the jury the conversation that you had with the defendant? A. Yes. Well, I asked him [appellant] in substance what happened. He indicated to me he did it again and he went on to describe what he meant, saying that the night in question he met this woman in a bar, they had a few drinks and then shortly after they left. They left the bar. In the course of the conversation, he told me the time was approximately 11:00 P.M., but he said he was not quite sure.

"Then he and this woman went out the bar and again he indicated he was not quite sure about some of the detail, but somehow both of them ended up in some—in the front of someone's home or in someone's front yard. He indicated that he made some kind of sexual advance to the woman and he attempted to have an act of sexual intercourse with her by leaning against her—leaning her against a tree. That was not quite successful, but at that time the woman made lots of noises, loud talking and so forth and made some kind of protest. So he and the woman went into the back yard. He kept saying that his memory was somewhat vague and cannot remember some of the detail, but he—the woman making noises quite well, he can remember that. He then—then he thought that an act of sexual intercourse on the ground. And after that—well, all this time the woman was making so much noise, noises and he put his hand on her mouth and tried to keep her quiet and also talking to her. Then afterward he figured the woman was

quite drunk and he couldn't get her up on her feet. So he left the woman and he went home."

Appellate courts have forthrightly criticized the admission of statements by a defendant such as the above. ■ We concur with Presiding Justice Shinn, speaking in *People* v. *Garcia,* 240 Cal.App.2d 9 [49 Cal.Rptr. 146], that the use of information obtained by a probation officer or, as here, by a correctional counselor, at a later trial is ". . . inherently deceptive, to say the least." *(Id.* at p. 13.)

In California, the desire to protect a defendant in his dealings with state officers is clear. *Ex parte Cohen,* 104 Cal. 524, 528 [38 P. 364] holds that the privilege of self-incrimination continues to shield a convicted defendant until ". . . he has satisfied the sentence of the law . . ." that is, presumably, until he has served his sentence. *Rebstock* v. *Superior Court,* 146 Cal. 308, 313 [80 P. 65], a later case, limits the shield of self-incrimination until a defendant has been finally convicted."[1] ■ All jurisdictions (see 9 A.L.R.3d 996 et seq.) do not see eye to eye on this issue, but California cases and the nature of the California indeterminate sentence law (see Comment, 18 Stan.L.Rev. 709 at p. 712) are warning enough that post-conviction statements made to state agents are not free game in the quest for evidence at retrial.

■ Initially, we reject the suggestion that there is any legal difference to be drawn between a probation officer *(People* v. *Alesi,* 67 Cal.2d 856, 860 [64 Cal.Rptr. 104, 434 P.2d 360]), and a correctional counselor for the purpose of determining the applicability of *Miranda.* The disingenuous argument propounded by respondent, that the full disclosure required by the nature of a correctional counselor's duties distinguish him from a probation officer, seeks to profit by the employment of the "inherently deceptive" methods which we have condemned; moreover, in terms of precedent, such a distinction is devoid of merit. *(People* v. *Polk,* 63 Cal.2d 443, 449 [47 Cal.Rptr. 1, 406 P.2d 641], cert. den. 384 U.S. 1010 [16 L.Ed.2d 1016, 86 S.Ct. 1914]. [Psychiatrist interviewed defendant at the request of the district attorney's office.])

The purpose of post-conviction interviews is not to obtain further evidence of guilt and insure conviction but to rehabilitate. Neither the individual defendant nor the state gains by a subversion of rehabilitation procedures to the evidentiary requirements of the prosecution.

■ We hold, however, that the introduction of the statements at bench,

---

[1]*Rebstock* was apparently overruled, albeit *sub silentio,* on other grounds in *People* v. *McGee,* 1 Cal.2d 611 [36 P.2d 378]. *(In re Connolly,* 16 Cal.App.2d 709, 712 [61 P.2d 490].)

even though in violation of *Miranda*,[2] does not constitute reversible error. Our holding is based on our finding that irrespective of appellant's statement to Mr. Ng, the record of guilt is overwhelming. The statement was at most an admission not a confession; and under *Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], the error implicit in its admission was harmless beyond a reasonable doubt. (*People* v. *Talley*, 65 Cal.2d 830, 840 [56 Cal.Rptr. 492, 423 P.2d 564].)

The four corners of the prosecution's case against appellant were established by evidence independent of the statement to Mr. Ng. Thus, there was testimony that appellant and Diane Harley were together, drinking in a public bar, shortly before the murder; particles of soil and fabric, examined by a criminalist, indicated appellant's presence at the scene of the crime; an autopsy of the victim revealed the cause of death to have been asphyxia caused by manual strangulation, and showed that she had recently engaged in sexual intercourse; and, most damning, there was appellant's spontaneous confession to his wife, properly received in evidence, that he had done "it again" and that it was "another girl." (*Infra.*)

■ Appellant's statement to Mr. Ng, as received in evidence, was exculpatory. It pictured Diane Harley as a willing participant in an act of sexual intercourse which appellant admitted took place. Similarly, his claim that he placed his hand on her mouth to keep her quiet, when taken in the context of the statement itself, fails to convey the essential element of a premeditated intent to kill. The comment that he left her on the ground because she was too drunk to get up is, of course, purely exculpatory. When viewed as a whole, appellant's statement to Mr. Ng served to confirm what other evidence amply established. No prejudicial error resulted from its admission. (*In re Spencer*, 63 Cal.2d 400, 407-408 [46 Cal.Rptr. 753, 406 P.2d 33], cert. den. 377 U.S. 1007 [12 L.Ed.2d 1055, 84 S.Ct. 1924]; *People* v. *Hillery*, 62 Cal.2d 692, 713 [44 Cal.Rptr. 30, 401 P.2d 382], cert. den. 386 U.S. 938 [17 L.Ed.2d 810, 87 S.Ct. 958], rehg. den. 386 U.S. 1000 [18 L.Ed.2d 355, 87 S.Ct. 1310]; *People* v. *Finn*, 232 Cal. App.2d 422, 429 [42 Cal.Rptr. 704].)

Appellant's contentions that the interview with Mr. Ng was inherently coercive; and that the statement given to Mr. Ng was the product of the conviction which was reversed in *People* v. *Webster*, 254 Cal.App.2d 743 [62 Cal.Rptr. 476], and was thus tainted by the "primary illegality" of that conviction, are both premised on the supposedly prejudicial nature of

---

[2]The trial from which this appeal is taken was held in 1968. Even though this was a retrial, and notwithstanding *Jenkins* v. *Delaware*, 395 U.S. 213 [23 L.Ed.2d 253, 89 S.Ct. 1677], *Miranda* applies. (*People* v. *Doherty*, 67 Cal.2d 9, 20 [59 Cal.Rptr. 857, 429 P.2d 177]; *People* v. *Welborn*, 2 Cal.App.3d 715, 721 [82 Cal.Rptr. 845].)

the statements given to Mr. Ng. That premise, as we have shown, does not apply. Moreover, these contentions are advanced in a conclusory fashion and rest on nothing more than the "bald declaration" of counsel that appellant was prejudiced. (*People* v. *Duane*, 21 Cal.2d 71, 78 [130 P.2d 123].) Error, however, cannot be based on such an insufficient allegation. (*Id*. at p. 78.)

Appellant next contends that evidence of two other crimes was improperly received and that prejudicial error resulted therefrom.

■ "Before permitting the jury to hear evidence of other offenses the court must ascertain that the evidence (a) 'tends logically, naturally and by reasonable inference' to prove the issue upon which it is offered; [ ] (b) is offered upon an issue which will ultimately prove to be material to the People's case; [ ] and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue;" (*People* v. *Schader*, 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841]).

Evidence was introduced in the course of the trial which showed that, in 1946, appellant had assaulted two women on two separate occasions; that he had met both women in public bars; that he and they had consumed alcoholic beverages; that appellant had driven off with the intended victims on each occasion, and thereupon had committed the assault; that appellant had strangled each victim with his hands, one until she lost consciousness, the other, until she died; that the breasts of each victim had been exposed by the forcible, if partial, removal of clothing.

In the case at bench, appellant met Diane Harley in a public bar, there, both of them consumed alcoholic beverages; later, Diane Harley's body was found, exposed in a manner identical to that of appellant's two previous victims; and the cause of her death was manual strangulation.

■ We are presented here with "links[s] of the chain of inference" between the former two and the present offense which are beyond cavil "reasonably strong." (*People* v. *Schader, supra*, at p. 775.) The pattern employed by appellant in singling out his victims, and the vicious details of the assaults themselves are identical. Evidence of the previous crimes tended naturally, logically and by reasonable inference to prove the material issue that appellant intended to, and evidently did, rape Diane Harley and that he murdered her in the commission of that rape. This was in fact one of the theories upon which the prosecution relied in seeking the admission of the previous crimes into evidence in the case at bench. Moreover, it is evident from the record that the evidence of the previous offenses was not cumulative; on the contrary, the autopsy was inconclusive on the question whether sexual intercourse had been voluntary or not. Appellant's *intent* to commit

rape and the *motive* of sexual gratification are shown by the previous offenses; they were therefore admissible in evidence. (Evid. Code, § 1101, subd. (b); *People* v. *Schader, supra,* 71 Cal.2d 761; *People* v. *Griffin,* 66 Cal.2d 459, 465 [58 Cal.Rptr. 107, 426 P.2d 507].)

Even if we credit appellant's assertion that there is no evidence which tends to show death as a result of accident or mistake, *People* v. *Kelley,* 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], holds that in the event intent is not in issue evidence of other sex offenses is admissible where the other offenses are not too remote, are similar to the offense charged and are committed with persons similar to the prosecuting witness. (*Id.* at p. 243.) As we have shown, the similarity between the prior and present offenses extended beyond the modus operandi to the identity of the victims—single women "picked up" in a public bar.

We are not unmindful of the fact that the previous offenses were committed several years prior to the murder of Diane Harley. In *People* v. *Wells,* 13 Cal.App.3d 265 [91 Cal.Rptr. 460], we approved the admission of a sex offense which antedated the charged crime by 10 months—a rigorous application of the remoteness criterion of *Kelley.* However, we hold that in view of the high degree of similarity between the charged and prior offenses, a similarity which extended to the grievous details of torn under- and street garments, the defect of remoteness is sufficiently cured.

*People* v. *Griffin,* 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507], another case involving murder committed in the course of rape, approved the admission of evidence tending to show the commission of a previous act of rape when the points of similarity were that the ". . . defendant became acquainted with a man living with a common law wife, used that acquaintance to be invited to the man's home for the night or longer, and then attacked the woman in the man's absence." (*Id.* at p. 465.) In the case at bench, the points of similarity were more extensive and detailed than in *Griffin.*

Appellant's argument that the evidence was insufficient to show the commission of one of the two previous offenses is factually not well taken. In the murder involving Carrie Bendel, appellant was seen with his victim shortly before the murder; his fingerprints, judged to be fresh, were found on her purse; and tire tracks at the scene of the crime matched those of appellant's vehicle.

After his arrest, appellant requested and was allowed to place a telephone call to his wife from the police station. He did not indicate that he wanted the conversation to be private. One officer was seated at his desk approximately four feet from appellant and heard appellant say to his wife:

"Leila, I did it again. It's another girl. I don't think you know her. Her name is Diane. I'm in the Long Beach Police Station."

An entirely independent ground for the admission of the two prior crimes is also present in that they directly explain the manner of the admission of appellant in his remark to his wife that "I did it again. It's another girl." Done what again? Evidence of the two prior crimes is directly admissible as an explanation of defendant's remark and an explanation of the inculpatory value of the admission made by defendant. Hence regardless of the admissibility of the two prior crimes under theories of common plan or scheme or theories of intent, the prior crimes are also admissible as an explanation of the meaning of what defendant said to his wife.

No error was involved in the admission into evidence of the two prior offenses.

With respect to the propriety of the testimony of the officer about what appellant said to his wife, there is no claim that the officer was an "undercover agent" or an eavesdropper nor that the statement was in response to questions posed by the police. Appellant does contend, however, that the statement was the necessary result of the interrogation which preceded it and which was unaccompanied by appropriate warnings of appellant's constitutional rights.

 Appellant's statement, and the legally significant circumstances surrounding it, are on all fours with the statement and circumstances of *People* v. *Gonzales,* 269 Cal.App.2d 586, 595 [75 Cal.Rptr. 267], certiorari denied 396 U.S. 1044 [24 L.Ed.2d 687, 90 S.Ct. 691]. In *Gonzales,* this court held that "Neither *Miranda* nor *Dorado* prohibit the receipt into evidence of statements or confessions that are entirely volunteered without solicitation or interrogation." (*Id.* at p. 595.) In *Gonzales,* as at bench, the call was made within the plain hearing of the police, at the police station, and to the defendant's wife. Even if we were to accept the suggestion made in counsel's brief (*People* v. *Merriam,* 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161].) that appellant's statement was "brought about" by the interrogation, there is nothing in the record which shows that it was in any way elicited by police questioning. On the contrary, the call was placed at appellant's request and what he said, he volunteered in the truest sense. If we were to proscribe every statement for the reason that it is "brought about," concededly in an indirect fashion, in a manner suggested solely by the ingenuity of appellate counsel and unsupported by the record, any statement made by a criminal defendant would speedily become inadmissible.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1971. Peters, J., was of the opinion that the petition should be granted.