[Crim. No. 1490. Fifth Dist. June 24, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ERIC SHIPE, Defendant and Appellant.

**COUNSEL**

David M. Blackman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Joel E. Carey and G. Michael Gates, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

GARGANO, J.—After jury trial, appellant was convicted of murder in the first degree. ■ Because we have concluded that his constitutional right of confrontation was violated, we reverse the judgment.

On March 1, 1972, Alva Hugh Kroupa, a dealer in marijuana and restricted dangerous drugs, was found murdered in his small cottage in Fresno, California; Kroupa had been stabbed 32 times with a knife apparently wielded by a left-handed person who cut himself in the hand during the stabbing.

On the afternoon of March 2, 1972, Gary Crawley, appellant and appellant's stepbrother, Marc Setencich, were arrested and charged with Kroupa's murder. At the time of the arrest, appellant had a knife wound on his left hand. Thereafter, Crawley and Setencich entered pleas of

guilty as accessories after the fact to the murder; appellant entered a plea of not guilty to the murder charge, and the cause proceeded to jury trial.

At the trial, the prosecutor called Gary Crawley and Marc Setencich as witnesses for the People. In answer to the prosecutor's preliminary questions, Crawley stated that he was 22 years of age, a high school graduate, right-handed and addicted to heroin and seconal; he said that he knew Kroupa, that he had purchased drugs from the decedent's girl friend, Doris Ihlenfeldt, and that he pled guilty to being an accessory after the fact in the murder. Then, the prosecutor asked the witness if he had gone to Kroupa's house on the evening of March 1, 1972. Crawley refused to answer on the ground that the question tended to incriminate him. The court, however, ruled that Crawley did not have the right to assert the Fifth Amendment privilege against self-incrimination because he had pled guilty to complicity in the crime; he told the witness that if he did not answer the question he would be in contempt of court. Later, out of the presence of the jury, Crawley's lawyer explained to the judge that he had advised his client to exercise the privilege. The court stated again that the witness did not have the right to assert the privilege and said that punishment for contempt would be useless; he ruled that Crawley was a hostile witness and that he could be cross-examined by the prosecutor. In the presence of the jury and over defense counsel's objections, the prosecutor asked, and the witness refused to answer, the following questions:

"Isn't it true that you were with Marc Setencich and Gary—the defendant, James Eric Shipe that night?

"Isn't it true that you were with the men I just mentioned in the Honda car belonging to James Eric Shipe?

"Isn't it true that James Eric Shipe was wearing a black beret that night, or a dark colored beret?

"Is it not true that when you arrived Katherine and Richard Stinnett were at Kroupa's with their baby?

"Is it not true that you engaged in an argument with Hugh Kroupa about your being there?

"Is it not true that you told Hugh Kroupa that you did not have a dime with which to call him?

"Is it not true that while you were at the Kroupa residence the three of you,—that the Stinnetts left the residence?

"Is it not true that after your argument with Kroupa you retired to the front lawn while Marc Setencich and James Eric Shipe remained inside the house with Kroupa?

"Is it not true that when you—You were called back into the house by Marc Setencich and when you arrived you saw the body of Hugh Kroupa on the floor in the living room?

"Is it not true that when you came back and saw the body of Hugh Kroupa that James Eric Shipe was on top of him?

"Is it not true that you saw James Eric Shipe remove the wallet of Hugh Kroupa and take the knife with him?

"Is it not true that then you and Marc Setencich removed the stereo set from the premises?

"Is it not true that with the money that was taken from Hugh Kroupa you were present when James Eric Shipe made a purchase, using $100 of that money, of heroin?

"Is it not true that you told the police about the incidents I have just examined you on?

"Is it not true that you have talked to me and my investigator about the events we have just discussed, I have just asked you questions on that?

"Did you stab Kroupa?

"Did you see James Eric Shipe stab Kroupa?

"Is it not true that on the 18th of August that in an interview in the jail with you you told me that you told the police the truth about this matter?

"Is it not true that at the time you saw the body of Alva Hugh Kroupa on the floor you went up to examine that body and because of your experience in Viet Nam determined the body to be dead?

"Is it not true that at the time of your arrest there were blood on your boots?

"Do you know the answers to the questions I have just asked you?

"Have you been advised by anyone not to testify here today?

"What did you three men do with that knife?

"Is it not true that after Kroupa was stabbed that the three of you went over to the house of Doris Ihlenfeldt on La Salle?

"And isn't it true that you were going there to Doris Ihlenfeldt's house to get drugs or narcotics?

"Isn't it true . . . that you and Marc Setencich delivered the stolen stereo set to the residence of Julian and Debbie Lopez?"

On direct examination by the prosecutor, Marc Setencich also answered a few preliminary questions. He said that he was 20 years old, that he was right-handed, that he was addicted to heroin and seconal, that he knew Hugh Kroupa and that he had pled guilty to the crimes of accessory after the fact in the murder and grand theft. Then, when the witness refused to answer any questions relating to the night of the crime, the court declared him a hostile witness and gave the prosecutor permission to ask leading questions. Over defense counsel's running objection, the prosecutor asked, and the witness refused to answer, these questions:

"Mr. Setencich, is it not true that you, along with Gary Crawley and your brother, James Eric Shipe, drove James Eric Shipe's Honda car to the residence of Hugh Kroupa on the evening of March 1, 1972?

"Is it not further true, Mr. Setencich, that in your presence Hugh Kroupa was stabbed multiple times by your brother, James Eric Shipe?

"Is it not further true, Mr. Setencich, that none of you had money when you went to the premises aforementioned, and that your purpose in going there was to purchase reds or barbituates?

"Is it not true that further, while you were there, your brother, or stepbrother, James Eric Shipe, removed a wallet and knife from the premises?

"Is it not further true, Mr. Setencich, that you removed a stereo set from Mr. Kroupa's premises, took the stereo set in your car, or in the Honda car, and left it at the residence of Debbie Lopez?

"Are you aware of anything that you told me at [the interview at Vacaville] that was not the truth?"

The trial judge ruled that Crawley and Setencich were not entitled to assert the Fifth Amendment privilege against self-incrimination even though neither man had served his sentence; in this state, it has been declared that the privilege against self-incrimination continues to shield a convicted defendant until he ". . . has satisfied the sentence of the law . . . ." (*Ex parte Cohen,* 104 Cal. 524, 528 [38 P.364]; see *People* v. *Webster,* 14 Cal.App.3d 739, 743 [93 Cal.Rptr. 260].) We are not concerned with this ruling. ▆▆ A defendant's constitutional right of confrontation can be violated even when the witness improperly exercises the Fifth Amendment privilege so long as the defendant did not actively procure the witness' refusal to answer the prosecutor's questions on that ground (*Douglas* v. *Alabama,* 380 U.S. 415, 420 [13 L.Ed.2d 934, 938, 85 S.Ct. 1074, 1077]; *People* v. *Harris,* 270 Cal.App.2d 863, 869 [76 Cal.Rptr. 130]); while the record shows that both witnesses were visited by appellant's trial counsel, no evidence was offered to prove that he or appellant persuaded them not to testify.

We turn to the constitutional question.

Before calling Crawley and Setencich to testify, the deputy district attorney had received indications that they were going to assert their Fifth Amendment privilege. ▆▆ However, a prosecutor is not required to accept at face value every asserted claim of privilege, and he may compel a witness to claim the privilege against self-incrimination on a question-by-question basis. (*People* v. *Chandler,* 17 Cal.App.3d 798, 804-805 [95 Cal.Rptr. 146]; see *Namet* v. *United States,* 373 U.S. 179, 188 [10 L.Ed.2d 278, 284-285, 83 S.Ct. 1151, 1155]; *People* v. *Sierra,* 117 Cal.App.2d 649, 651 [256 P.2d 577].) But, he may not, under the guise of cross-examination, get before the jury what is tantamount to devastating direct testimony. For example, here the prosecutor, after compelling Crawley and Setencich to admit that they pled guilty to complicity in the murder of Kroupa, succeeded, through a series of blatantly leading questions, in creating the almost irrefutable inference that appellant was the one who viciously and brutally stabbed the decedent. He also succeeded in creating the distinct and almost irrefutable inference that

the witnesses had related the events about which they were being questioned to the authorities and that their statements were true. It is precisely this form of questioning that the United States Supreme Court condemned in *Douglas* v. *Alabama, supra,* 380 U.S. 415, 420 [85 S.Ct. 1074, 1077].

In *Douglas,* the witness, an alleged accomplice of petitioner, was called to the stand by the prosecutor to testify; he asserted his privilege against self-incrimination, and the trial court ruled that he could not rely on the privilege and ordered him to answer. The witness still claimed the privilege, and after the court declared him a hostile witness the prosecution was permitted to ask leading questions similar to those asked in the present case. The United States Supreme Court stated:

"In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. Loyd's alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this formed a crucial link in the proof both of petitioner's act and of the requisite intent to murder. Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. [Citations.] Since the Solicitor was not a witness, the inference from his reading that Loyd made the statement could not be tested by cross-examination. Similarly, Loyd could not be cross-examined on a statement imputed to but not admitted by him. Nor was the opportunity to cross-examine the law enforcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause. Indeed, their testimony enhanced the danger that the jury would treat the Solicitor's questioning of Loyd and Loyd's refusal to answer as proving the truth of Loyd's alleged confession. But since their evidence tended to show only that Loyd made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of Loyd to test the truth of the statement itself. [Citations.]

"Hence, effective confrontation of Loyd was possible only if Loyd affirmed the statement as his." (*Douglas* v. *Alabama, supra,* 380 U.S. 415,

419-420 [13 L.Ed.2d 934, 937-938, 85 S.Ct. 1074, 1077]; see *People* v. *Harris, supra,* 270 Cal.App.2d 863, 868-869; see also *Frazier* v. *Cupp,* 394 U.S. 731, 734-735 [22 L.Ed.2d 684, 690-691, 89 S.Ct. 1420, 1422-1423]; *People* v. *Woodberry,* 265 Cal.App.2d 351, 359 [71 Cal.Rptr. 165].)

Respondent stresses the good faith of the prosecutor in asking the questions to which Crawley and Setencich claimed the privilege against self-incrimination. ■ The prosecutor's good faith, or lack of it, is not controlling in determining whether a defendant has been deprived of the right of confrontation guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. (*Frazier* v. *Cupp, supra,* 394 U.S. 731, 736 [22 L.Ed.2d 684, 691, 89 S.Ct. 1420, 1423].) Also, the constitutional error committed in this case was not in calling the witnesses and forcing them to claim the privilege against self-incrimination; the error was in the manner in which the witnesses were questioned. The prosecutor could have compelled each witness to assert his privilege without resorting to the flagrantly suggestive questions he asked. (See *Cota* v. *Eyman* (9th Cir.) 453 F.2d 691, 693, 694.)

Next, respondent maintains that the record "suggests" that defense counsel actively procured the witnesses' refusal to answer the prosecutor's questions and invited the procedure utilized by the prosecutor in this case; respondent has reference to several vague comments made by the prosecutor and defense counsel regarding the possibility that the witnesses would refuse to testify.

Respondent misinterprets the statement that the United States Supreme Court made on this point in *Douglas* v. *Alabama, supra,* 380 U.S. 415, 420 [85 S.Ct. 1074, 1077]. In *Douglas,* the Supreme Court indicated that the result might have been different if the petitioner or his counsel had actively solicited the witness' refusal to answer the questions propounded by the prosecutor; it was in this context that the court said that no "suggestion" was made that petitioner or counsel had done so. Clearly, the high court did not mean to imply that any suggestion, no matter how tenuous it may be, gives the prosecutor unfettered license to disregard a substantial constitutional safeguard. ■ We believe that the determination as to whether the defendant or his counsel actively solicited a witness' refusal to answer questions propounded by the prosecutor is a question of fact, and like other fact questions, it must be supported by substantial evidence.

Respondent argues that the *Douglas* opinion must be read in light of the more recent expression of the United States Supreme Court in *Dutton* v. *Evans,* 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210]. After asserting that in *Dutton* the Supreme Court gave its approval to the admission into evidence of the witness' declaration against penal interest, respondent reasons that no violation of the right of confrontation would have been found in the *Douglas* case if the declarant's confession had been introduced as a declaration against interest. Respondent then reasons that because Crawley and Setencich told the law enforcement authorities that appellant had killed Kroupa before they were questioned by the prosecutor at trial, and because these statements were admissible into evidence as declarations against the witnesses' penal interests, the prosecutor's leading questions were harmless.

Respondent's argument must fail for the reason that there is nothing in the record to prove that after they were arrested Crawley and Setencich told the police that appellant was the one who brutally stabbed Kroupa and that they vividly described all of the details of the murder as suggested by the prosecutor's leading questions. The prosecutor presented no evidence nor did he make any offer of proof to this effect; while he presented two witnesses who testified that Crawley and Setencich had admitted being at Kroupa's house on the night of the murder and had described some of the details, neither witness said that Crawley or Setencich described the murder itself or implicated appellant in any manner whatever.

Because of the probability of another trial, we shall consider the Attorney General's argument on the merits.

Section 1230 of the Evidence Code makes admissible into evidence a declarant's statement against his own penal interest if the declarant is unavailable as a witness; under section 240 of the Evidence Code, a witness is unavailable when he asserts the privilege against self-incrimination. (*People* v. *Smith,* 13 Cal.App.3d 897, 902 [91 Cal.Rptr. 786, 52 A.L.R.3d 875].). ■ While the United States Supreme Court has indicated that under some circumstances the admission into evidence of a declaration against penal interest, where the declarant is unavailable as a witness, does not offend the confrontation clause of the United States Constitution (*Dutton* v. *Evans, supra,* 400 U.S. 74, 89 [27 L.Ed.2d 213, 227, 91 S.Ct. 210, 220]), still not all extrajudicial declarations are admissible in a criminal trial merely because they are against penal interest. To satisfy the confrontation clause, the declaration against penal

interest must be clothed with sufficient indicia of reliability to warrant its admission. (*Dutton* v. *Evans, supra,* 400 U.S. 74, 89 [91 S.Ct. 210, 220].) As section 1230 of the Evidence Code puts it, the declaration against interest must be made under circumstances where a reasonable man in the declarant's position ". . . would not have made the statement unless he believed it to be true."

In the case at bench, the alleged confession implicating appellant as the murderer of Kroupa was made by Crawley shortly after he was arrested and charged with the murder of Kroupa; Setencich's "confession" implicating appellant was made after he pled guilty to a lesser offense but before sentencing. Each confession was made when the declarant had a motive for lying, and it is significant that each exculpated himself of the greater offense of murder in the first degree while admitting lesser transgressions. It is also significant that each declarant was permitted to enter a plea of guilty to a lesser offense. In our view, the statements in question do not come within section 1230 of the Evidence Code and are not clothed with sufficient indicia of reliability to satisfy the confrontation clause of the United States Constitution.

The case of *Dutton* v. *Evans, supra,* 400 U.S. 74 [91 S.Ct. 210], does not support respondent's position. In *Dutton,* a coparticipant in the murder of three police officers, after his arraignment and in answer to a question from a fellow-prisoner as to how he made out at the arraignment, stated, "If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now." At Evans' trial, the coparticipant's statement was admitted under a Georgia statute which provided that once the fact of conspiracy had been proved, the declaration of any one of the conspirators made "during the pendency of the criminal project" was admissible against all conspirators; the statute had been interpreted by the Georgia courts to encompass statements made after the actual commission of the crime so long as the conspirators were engaged in either concealing the fact that a crime had been committed or concealing their identity. In upholding the state court's ruling that the declaration was admissible, the United States Supreme Court, among other things, pointed out that the statement was not only against the declarant's penal interest but that it was made at a time when the declarant had no apparent reason to lie and was spontaneous. (*Supra,* 400 U.S. at pp. 88-89 [27 L.Ed.2d at pp. 226-227, 91 S.Ct. at pp. 219-220].) Here, Crawley's alleged statement was made after he was placed under arrest and charged with the murder of Kroupa; Setencich's purported statement was made while awaiting sentencing after his plea of guilty to a

lesser offense; both had good reason to lie. In addition, these statements were exculpatory in nature because the declarants blamed appellant for the murder of Kroupa.

For the guidance of the trial court in the event of another trial, we hold that to satisfy the requirements of section 1230 of the Evidence Code and the confrontation clause of the United States Constitution, a declaration against penal interest must be "distinctly" against the declarant's penal interest (*People* v. *Traylor*, 23 Cal.App.3d 323, 331 [100 Cal.Rptr. 116]) and must be clothed with indicia of reliability; such indicia of reliability are lacking where the declaration is made to authorities after the declarant has been arrested and charged with a serious offense or after he has pled guilty to a lesser offense and is awaiting sentencing and where, as here, the statement is exculpatory in the sense that the declarant has blamed a coparticipant for the commission of the greater offense while admitting complicity to some lesser degree.[1]

Lastly, respondent suggests that the prosecutor had the right to ask the leading questions to lay a foundation for impeachment purposes. It relies on *People* v. *Green*, 3 Cal.3d 981, 988 [92 Cal.Rptr. 494, 479 P.2d 998], wherein the California Supreme Court held that a prosecution witness could be impeached by the use of a prior statement concerning an event the witness could not "remember" at the trial.

The *Green* case is not in point. In that case the witness testified extensively for the People before he became "markedly evasive and uncooperative" and no longer could remember clearly what had occurred. It was in this context that the court said "[i]nconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement . . . ." (*Supra*, 3 Cal.3d at p. 988.) In the present case, each witness answered a few innocuous preliminary questions but steadfastly refused to answer any inquiry pertaining to the night of the crime or concerning any fact or circumstance relating to the crime. There was no occasion to impeach the witnesses, and the leading questions propounded by the prosecutor were not asked for that purpose. (*People* v. *Woodberry, supra,* 265 Cal.App.2d 351, 359.)

---

[1]For all practical purposes a contrary holding would render nugatory the United States Supreme Court decision of *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], and the California Supreme Court decision of *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].

We would be reluctant to reverse the jury's verdict in this case if the question before us were whether it is reasonably probable that a result more favorable to appellant would have been reached by the jury if the prosecutor had not asked the questions we delineated. It was established that Hugh Kroupa was a purveyor of narcotics, that appellant, Gary Crawley and Marc Setencich were narcotic addicts, that they visited Kroupa on the night of the murder, that they needed narcotics but did not have money to buy them and that they argued with the murdered man. It also was established that the person who did the stabbing was left-handed, that he cut himself on the left hand and that, like the victim, he had Type A blood; appellant is left-handed, has Type A blood and when arrested had a knife wound on the left hand.

However, the error committed in the instant case is of constitutional dimensions, and the question we must answer is whether it is clear beyond a reasonable doubt that the error did not influence the jury's verdict. (*Chapman* v. *California,* 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 827-828, 24 A.L.R.3d 1065]; *People* v. *Modesto,* 66 Cal.2d 695, 712 [59 Cal.Rptr. 124, 427 P.2d 788]; *People* v. *Harris, supra,* 270 Cal.App.2d 863, 869-870.) The evidence of appellant's guilt was entirely circumstantial and the prosecutor, through the guise of cross-examination, succeeded in getting before the jury a vivid picture of what he believed actually occurred on the night of the murder. He also succeeded in creating the distinct impression that Crawley and Setencich had talked to the authorities, that they described the events vividly depicted in the prosecutor's questions and that their statements were true. It stretches the imagination to believe that the prosecutor's questions did not influence the verdict. (*People* v. *Modesto, supra,* 66 Cal.2d 695, 712.)

The judgment is reversed.

Brown (G. A.), P. J., and Franson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 20, 1975.