[No. B086265. Second Dist., Div. One. July 7, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE FONSECA, Defendant and Appellant.

632

**COUNSEL**

Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and Raymund F. Robles, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—Rejecting defendant's claims that a defense witness should have been compelled to testify, we affirm his cocaine trafficking conviction. We hold that a convicted defendant retains his Fifth Amendment privilege as to subsequent proceedings against other defendants at least until the time he no longer retains the right to file a timely notice of appeal.

### BACKGROUND

An undercover officer approached Marcelo Ramirez and asked to buy cocaine. Ramirez told the officer to wait and walked several feet over to defendant, who gave Ramirez something from his pocket. Neither the officer nor his partner (still in the vehicle) could see what defendant gave Ramirez or hear what was going on. Ramirez handed cocaine to the officer. Other officers immediately arrested defendant and Ramirez. The police found no drugs, money, or paraphernalia on defendant.

Ramirez pled guilty and was placed on probation September 14, 1992, to serve the first 365 days in jail. On October 1, 1992, defendant called Ramirez to the stand as a defense witness, expecting him to testify that he had not acquired the cocaine from defendant and that defendant had nothing to do with the sale. The trial court appointed counsel for Ramirez, who then invoked his Fifth Amendment privilege against self-incrimination.

The issue on appeal is whether Ramirez's guilty plea and sentencing had terminated his Fifth Amendment privilege.

### DISCUSSION

#### I

There is some uncertainty as to when the privilege ends. Without further discussion, the appellate court in *In re Paul P.* (1985) 170 Cal.App.3d 397 [216 Cal.Rptr. 51], citing *People* v. *Webster* (1971) 14 Cal.App.3d 739, 743 [93 Cal.Rptr. 260], stated at page 401, in pure dictum, that "Fifth Amendment principles apply even though the statements are made to state agents in

a postconviction setting." In conclusory language, *People* v. *Frohner* (1976) 65 Cal.App.3d 94 [135 Cal.Rptr. 153], and *People* v. *Sierra* (1953) 117 Cal.App.2d 649 [256 P.2d 577], suggest that conviction terminates the privilege. They do not discuss whether "conviction" means entry of the verdict or pronouncement of judgment (sentencing).

"In California, the desire to protect a defendant in his dealings with state officers is clear. *Ex parte Cohen,* 104 Cal. 524, 528 . . . holds that the privilege of self-incrimination continues to shield a convicted defendant until '. . . he has satisfied the sentence of the law . . .' that is, presumably, until he has served his sentence. *Rebstock* v. *Superior Court,* 146 Cal. 308, 313 . . . , a later case, limits the shield of self-incrimination until a defendant has been [']finally convicted.' All jurisdictions . . . do not see eye to eye on this issue, but California cases and the nature of the California indeterminate sentence law . . . are warning enough that postconviction statements made to state agents are not free game in the quest for evidence at retrial." (*People* v. *Webster, supra,* 14 Cal.App.3d at p. 743, citations and fn. omitted.) (We recognize that, with a couple of exceptions, California no longer has indeterminate sentencing.)

"*Rebstock* was apparently overruled, albeit *sub silentio,* on other grounds in *People* v. *McGee,* 1 Cal.2d 61 . . . . (*In re Connolly* (1936) 16 Cal.App.2d 709, 712 [61 P.2d 490].)" (*People* v. *Webster, supra,* 14 Cal.App.3d at p. 743, fn. 1.) "Subsequent California cases have cited the *Cohen* dictum without directly addressing the issue[ of whether the privilege survives pending resolution of an appeal]. (See, e.g., *People* v. *Webster*[, *supra,*] 14 Cal.App.3d [at p.] 743 . . . ; *People* v. *Shipe* (1975) 49 Cal.App.3d 343, 349. . . ; *People* v. *Kizzee* (1979) 94 Cal.App.3d 927, 938 . . . .) Courts in other jurisdictions have held that the pendency of an appeal shields a witness from a requirement that he testify at the trial of a codefendant. (*State* v. *Johnson* (1955) 77 Idaho 1 . . . ; *People* v. *Den Uyl* (1947) 318 Mich. 645 . . . ; *Mills* v. *United States* (4th Cir. 1960) 281 F.2d 736.) [¶] We conclude that a witness who has been convicted of a crime and who has appealed that conviction cannot be compelled to testify in the trial of a codefendant pending the resolution of that appeal. . . ." (*People* v. *Lopez* (1980) 110 Cal.App.3d 1010, 1021 [168 Cal.Rptr. 378]; see also *In re Strick* (1983) 34 Cal.3d 891, 899 [196 Cal.Rptr. 509, 671 P.2d 1251], and *People* v. *Dennis* (1986) 177 Cal.App.3d 863, 874 [223 Cal.Rptr. 236].)

In *People* v. *Kizzee* (1979) 94 Cal.App.3d 927 [156 Cal.Rptr. 784], the dispositive issue was whether an accused awaiting sentencing retained his Fifth Amendment privilege. The appellate court held at page 938 that "an accused does not lose his privilege against self-incrimination until he has been sentenced."

■ Thus, while it is uncertain whether the privilege survives until the convict has served a determinate sentence, it is clear in California that one retains the privilege at least until he has been sentenced and, if he appeals, pending resolution of the appeal.

■ What then of one who has been sentenced and who has not yet, but still can, file an appeal? In *In re Courtney S.* (1982) 130 Cal.App.3d 567 [181 Cal.Rptr. 843], the juvenile court took custody of a child after her mother's boyfriend (Arthur) molested the child. The mother later married Arthur, who pled guilty to molesting the child. At the juvenile court hearing to determine the mother's rights, Arthur invoked his Fifth Amendment privilege. The trial court found him unavailable and allowed into evidence a tape-recorded statement he had made to police.

The mother claimed, in part, that the privilege was no longer available to Arthur, since he had been convicted. The appellate court did not set out the sequence of events, but stated unequivocally "that a witness retains the privilege during the pendency of an appeal. [Citation.] Since Arthur *still had the right to appeal* at the time his testimony was sought, the privilege was still available to him." (130 Cal.App.3d at p. 573, italics added.) The case thus stands for the proposition that the privilege remains at least until the time to file a notice of appeal has expired, and that a guilty plea does not necessarily preclude the filing of a legitimate appeal. Here, Ramirez testified a little over two weeks after his plea. Time remained within which to file a timely notice of appeal. The trial court properly found that he retained the privilege.

Defendant relies on several cases, which we find inapplicable. In *Blackburn* v. *Superior Court* (1993) 21 Cal.App.4th 414 [27 Cal.Rptr.2d 204], a civil case arising out of child molestation, the statute of limitations for criminal prosecution barred prosecution at the time the privilege was claimed. Since the civil defendant could not be criminally punished, the privilege did not apply.

Rehearing has been granted in *Doe* v. *Superior Court** (Cal.App.), so that case is no longer on the books. *People* v. *Manago* (1990) 220 Cal.App.3d 982, 989 [269 Cal.Rptr. 819], merely held that one awaiting sentence retained the privilege. It did not deal with the question of whether the privilege survived sentencing. The same is true of *People* v. *Kizzee, supra,* 94 Cal.App.3d 927.

*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], merely held that one waives the privilege by entering a plea of guilty. It did

*Reporter's Note: Opinion (B062881) deleted upon direction of Supreme Court by order dated October 16, 1992.

not deal with the question of subsequent testimony pending sentencing or appeal. The same is true of *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People* v. *De Vaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].)

In *Reina* v. *United States* (1960) 364 U.S. 507 [5 L.Ed.2d 249, 81 S.Ct. 260], the petitioner, serving a federal prison sentence, had refused to answer questions before a federal grand jury and had been held in contempt. The questions pertained to the events leading to his conviction. A federal statute gave him immunity for compelled grand jury testimony. He claimed he could not be compelled to testify unless the statute included immunity from state prosecution. The Supreme Court held the statute conferred state immunity. Since the testimony was thus not self-incriminating, it was not necessary to grant the petitioner a pardon or amnesty before making him testify. In dictum the court, citing lower federal cases, said "[t]here is indeed weighty authority for [the] proposition" that " 'once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime . . . .' " (*Id.* at p. 513 [5 L.Ed.2d at p. 255].) This is seemingly contradictory to the court's entire opinion that petitioner could be compelled to testify because of the immunity statute. If a conviction stripped him of his Fifth Amendment privilege, why would immunity be a prerequisite to his being held in contempt for refusing to testify? The court seemed to recognize this when, referring to the "weighty authority," it stated at page 513 [5 L.Ed.2d at page 255] that "immunity, *at least from federal prosecution*, need not have been offered the petitioner at all." (Italics added.) This would seem to leave open the question of whether immunity was still necessary as to state prosecution. If so, state court decisions extending the privilege, as to state prosecution, beyond the "weighty authority" period, are valid. *Reina* did not tackle our specific issue or address it in any way.

In *People* v. *Brown* (1988) 45 Cal.3d 1247 [248 Cal.Rptr. 817, 756 P.2d 204], at the penalty phase "defendant took the stand in his own behalf under a ruling that he could profess his innocence of the capital crime without subjecting himself to cross-examination on that issue." (*Id.* at p. 1260.) Defendant testified about his background. "[D]uring closing argument, the prosecutor declared, 'The defendant can sit in this courtroom and take the stand and testify about the details of his life and become more human to you, appear pleasant and likeable. Never once discussing the circumstances of the crime that he committed.' " (*Ibid.*) On appeal, the defendant claimed the comment violated his privilege against self-incrimination. (*Griffin* v. *California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229].) The California Supreme Court agreed "with the People that the trial court's

decision to limit cross-examination was incorrect. Defendant's right against self-incrimination was inapplicable, since (1) a determination of guilt had already occurred, and (2) his general denial of guilt waived any constitutional privilege against cross-examination on that issue. [Citation.] Moreover, any general policy that defendant may testify at the penalty phase without comment upon his *failure to discuss his guilt* [citation] is inapplicable where defendant buttresses his penalty defense by *denying* his guilt. The effect of the trial court's ruling was to grant defendant a right of allocution before the penalty jury. No such right exists under California law. [Citation.]" (*People* v. *Brown, supra,* 45 Cal.3d at p. 1261.)

The *Brown* court's comment has to be limited to the context of cross-examination of a defendant. It thus, like *Boykin* v. *Alabama, supra,* 395 U.S. 238, did not deal with the specific question of testimony in another proceeding pending sentencing or appeal. *Brown* cites *People* v. *Saddler* (1979) 24 Cal.3d 671, 679 [156 Cal.Rptr. 871, 597 P.2d 130], which merely held that ". . . a defendant who takes the stand and testifies in his behalf waives his Fifth Amendment privilege [citation] and his state constitutional privilege *to the extent of the scope of relevant cross-examination.* [Citations.]" (*Ibid.,* italics added.) *Brown,* read in conjunction with *Saddler,* merely reiterates the basic rule that a defendant cannot take the stand, deny his guilt, and then invoke the privilege to avoid cross-examination. Indeed, the same rule applies in a noncapital case, in which instance a testifying defendant so waives the privilege even before the jury has convicted him.

Defendant points out that Ramirez, having pled guilty, could not appeal unless he obtained a certificate of probable cause pursuant to Penal Code section 1237.5. Without more, we are not prepared to rule as a matter of law that Ramirez could not have obtained the certificate. (See *In re Courtney S., supra,* 130 Cal.App.3d at p. 573 [although having pled guilty, "Arthur still had the right to appeal at the time his testimony was sought . . . ."].)

In sum, under the instant circumstances, the privilege evaporates in two ways, waiver and expiration. A defendant who takes the stand during his own trial to deny guilt, waives the privilege *as to that proceeding,* as does a defendant who pleads guilty. But in neither case does he waive the privilege as to subsequent proceedings against other defendants; at the earliest, the privilege expires when the time to file an appeal has passed with no notice of appeal filed. We do not decide whether the privilege survives until he has served his sentence.

We hold Ramirez retained his Fifth Amendment privilege because the time in which he could file an appeal had not yet expired. Thus, the trial

court properly upheld Ramirez's invocation of the privilege. We find no error.

## II

██ Defendant says the trial court should not have upheld a blanket invocation by Ramirez, but should have ruled on a question-by-question basis. Asked twice if he had been arrested and charged in the incident, Ramirez invoked. Asked if he had pled guilty, he invoked. Asked if defendant had given him cocaine on the fateful day, he invoked. Asked if he was "going to assert your Fifth Amendment privileges in connection with any questions asked of you this morning[,]" Ramirez answered, "Yes."

We do not know what more the trial court could have done. It was plain that any question about the incident would incriminate Ramirez. It was equally plain that questions about anything other than the incident were irrelevant. It was clear that Ramirez intended to invoke under any circumstance. "The requirement that [counsel] pose to the witness each question he intended to ask and require that the witness invoke the privilege as to each would create a meaningless ritual. Where, as here, it is apparent that the witness would have offered no testimony in response to questions posed, it is not improper for the trial court to determine that fact in advance and excuse the witness." (*People* v. *Cornejo* (1979) 92 Cal.App.3d 637, 659 [155 Cal.Rptr. 238].)

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Masterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 4, 1995.