[Crim. No. 23293. Second Dist., Div. Two. Oct. 23, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE NATHAN CARTER, Defendant and Appellant.

**COUNSEL**

Joe Nathan Carter, in pro. per., and John J. Schimmenti, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and Joel Levine, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—Defendant was convicted of murder in the first degree (Pen. Code, § 187) following trial by jury. He appeals from the judgment and contends that the trial court improperly admitted into evidence certain admissions made by him to his probation officer and to his wife.

### THE FACTS

Defendant and his wife, Bobbie Jean Carter, formerly lived in an apartment on West 60th Street in Los Angeles. The victim, Mrs. Inez Walker, and her daughter, Gilda, lived across the hall. Defendant's wife left him in March 1971, to move to Chicago. Thereafter defendant's wife and Gilda corresponded.

At the time of the offense charged here defendant was on probation from a conviction for receiving stolen property. He obtained permission to travel to Conway, Arkansas, to visit a relative. Without approval of probation authorities he went to Chicago to see his wife.

Defendant stayed with his wife two or three days. While she was at work he found a letter from Gilda. He became angered about its contents and telephoned his wife to come home, telling her the baby was sick. When the wife arrived defendant tore off her clothes, cut her about the face, neck and breast, and threatened to kill her and sexually mutilate her. In the course of this assault defendant demanded to know who had aided his wife in getting to Chicago. She answered that it was Gilda and Mrs. Walker, whereupon defendant stated "I'm going to kill them all."

On August 13, 11 days later, defendant went to the victim's apartment in Los Angeles and when she answered the door defendant shot her

once in the forehead and once in the abdomen with a .22 revolver. She died at the scene.

Subsequently, defendant on two separate occasions talked to Ella Louise Lewis, a community worker for the Los Angeles County Probation Department. He related to her the details of the incident in Chicago and told Mrs. Lewis that he had gone to the victim's home intending to kill anyone in the apartment.

Defendant was arrested some months later in Texas and his gun was recovered there. A test showed that a bullet taken from the victim's body matched that weapon.

After a hearing outside the presence of the jury, the trial court ruled that defendant's wife might testify as to the threat to "kill them all" and further ruled that Mrs. Lewis could testify as to the statements made to her.

## DEFENDANT'S CONTENTIONS

Defendant urges that his statements to the probation officer were privileged.

There is no statutory privilege protecting communications made to a probation officer. It has been held, however, that "admissions made to a probation officer in the hope that candor will persuade the probation officer to make a favorable report to the court are not admissible . . . *in any retrial on the same issues.*" (Italics added.) (*People* v. *Harrington,* 2 Cal.3d 991, 999 [88 Cal.Rptr. 161, 471 P.2d 961], cert. den., 402 U.S. 923 [28 L.Ed.2d 662, 91 S.Ct. 1384].)

Defendant's statements to Mrs. Lewis were not made in the context of a potential probationer seeking a favorable report following a conviction. Defendant was on probation for receiving stolen property but his statements were not directed to that crime or that conviction. Application of the rule of *Harrington* here would be an extension which is unwarranted either by the circumstances of this case or the rationale in *Harrington.*

It appears that defendant's relationship with Mrs. Lewis had taken on aspects which were more social than professional and his statements to her were spontaneous and in the course of social conversations. This then is an answer to defendant's second claim of error, i.e., a failure on the part of Mrs. Lewis to articulate the so-called *Miranda* warnings. The statements

were not the product of interrogation and no such warnings were required. (*People* v. *Powell,* 67 Cal.2d 32 [59 Cal.Rptr. 817, 429 P.2d 137]; *People* v. *Webster,* 14 Cal.App.3d 739 [93 Cal.Rptr. 260].)

▮ Defendant next maintains the trial court erred in permitting his wife to testify to his having stated to her "I'm going to kill them all," for the reason that it was a privileged confidential marital communication.

While the communication was made in Chicago, the question of privilege is determined by reference to the law of California. (*First Trust Co. of St. Paul* v. *Kansas City Life Ins. Co.,* 79 F.2d 48, 52; cf. *Baird* v. *Koerner,* 279 F.2d 623, 632.)

Evidence Code section 980 provides in part: "Subject to Section 912 and except as otherwise provided in this article, a spouse . . . whether or not a party, has a privilege during the marital relationship and afterwards to . . . prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife."

Certain exceptions to the existence of the privilege are found in Evidence Code section 985 which states in part: "There is no privilege under this article in a criminal proceeding in which one spouse is charged with: (a) A crime committed at any time against the person or property of the other spouse or of a child of either. (b) A crime committed at any time against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse."

While these exceptions do not cover the statement made to the wife here they are germane to a consideration of whether the statement made during the course of an assault on the wife was one "made in confidence" as required by Evidence Code section 980.

▮ A communication between husband and wife is presumed to be confidential and the burden is on the opponent of the privilege to prove otherwise. (Evid. Code, § 917.) If the facts show that the communication was not intended to be kept in confidence the communication is not privileged. (*Solon* v. *Lichtenstein,* 39 Cal.2d 75 [244 P.2d 907].)

▮ The privilege afforded to a confidential marital communication is based on considerations of public policy which seek to preserve the confidence and tranquility of the marital relationship. The essence of a confidential communication between spouses is that it springs from the confidence which exists between them because of the marital relationship.

These public policy considerations would not be served by shielding as confidential and privileged threats against third persons made by one spouse in the course of criminally victimizing the other spouse. Hence the exceptions embodied in Evidence Code section 985 are universally recognized.

Had defendant been prosecuted in Illinois for the assault on his wife no privilege would have prevented her testimony as to the statements made in the course thereof.[1]

Thus defendant could have no reasonable expectation of confidentiality as to the threats against third persons made by him during the course of committing a violent assault on his wife. Those were simply not statements which would qualify as communications made in confidence and thereby gain the protection of the statutory privilege or the public policy which underlies that privilege.

The importance of the requirement that the communication be truly one made in confidence is further underlined by the provisions of Evidence Code section 912, subdivision (a), which provides that the privilege is waived if the holder thereof ". . . has disclosed a significant part of the communication . . . ." On this latter basis defendant's claim of privilege is also doomed to failure. He did disclose to Mrs. Lewis, the probation officer, a significant part of his Chicago conversation with his wife.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1973.

---

[1]Smith-Hurd Illinois Annotated Statutes, chapter 38, Criminal Law and Procedure, section 155-1 provides in part: "In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during coverture, *except in cases where either is charged with an offense against the person* or property *of the other,* or in case of wife abandonment, or where the interests of their child or children are directly involved, or as to matters in which either has acted as agent of the other." (Italics added.)