Filed 7/22/16  P. v. Hernandez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069900 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1208889) |
| JAVIER HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Michele D. Levine, Judge.  Affirmed and remanded with directions.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

After falsely imprisoning and beating his wife, Sheila Negrete-Rios (Negrete), Javier Hernandez-Rios (Hernandez) decided to jump off an overpass onto the State Route 91 freeway (SR-91). California Highway Patrol (CHP) Officer Dane Norem grabbed Hernandez's leg when Hernandez was halfway over the fence. Hernandez pulled out a knife, and stabbed Officer Norem in the eye and other parts of his body. He also attempted to stab two off-duty police officers and a third passerby who had stopped to help Officer Norem: City of Riverside Police Department Officer Nathan Asbury, San Bernardino County Sheriff's Department Sergeant John Walker, and Douglas Matz. Before we delineate Hernandez's ineffective-assistance-of-counsel claims on appeal, we first provide the procedural context of this case, which involved two jury trials.

*First Trial*

In February 2015, the Riverside County District Attorney's Office filed an amended information charging Hernandez with 10 felony offenses: (1) attempted murder (count l: Pen. Code, §§ 187, subd. (a), 664; victim: Officer Norem); (2) mayhem (count 2: Pen. Code, § 203; victim: Officer Norem); (3) assault with a deadly weapon (a knife) on a peace officer (count 3: Pen. Code, § 245, subd. (c); victim: Officer Norem); (4) assault with a deadly weapon (count 4: Pen. Code, § 245, subd. (a)(l); victim: Officer Asbury); (5) assault with a deadly weapon (count 5: Pen. Code, § 245, subd. (a)(l); victim: Sergeant Walker); (6) assault with a deadly weapon (count 6: Pen. Code, § 245, subd. (a)(l); victim: Matz); (7) possession for sale of heroin (count 7: Health & Saf. Code, § 11351); (8) corporal injury on a spouse (count 8: Pen. Code, § 273.5, subd. (a);

2

victim: Negrete); (9) assault with a deadly weapon (a screwdriver) (count 9: Pen. Code, § 245, subd. (a)(l); victim: Negrete); and (10) false imprisonment (count 10: Pen. Code, § 236; victim: Negrete).

The amended information also alleged (1) with respect to count 1 (attempted murder) that the victim (Officer Norem) was a peace officer (Pen. Code, § 664, subds. (e) & (f)); (2) with respect to counts 1 and 3 (assault with a deadly weapon) that Hernandez personally inflicted great bodily injury on Officer Norem (Pen. Code, § 12022.7, subd. (a)); and (3) with respect to counts 8 (corporal injury on a spouse) and 10 (false imprisonment) that he personally used a deadly weapon in committing those crimes against Negrete (Pen. Code, § 12022, subd. (b)(l)).

In mid-March 2015, after the trial court granted Hernandez's motion to dismiss count 7 (possession for sale of heroin) under Penal Code section 1118.1, a jury found him guilty of counts 2 through 6 (mayhem upon Officer Norem, assault with a deadly weapon on a peace officer (Officer Norem), assault on Officer Asbury with a deadly weapon, assault on Sergeant Walker with a deadly weapon, and assault on Matz with a deadly weapon, respectively). The jury found to be true the count 3 great-bodily-injury enhancement allegation.

However, the jury found Hernandez was not guilty of counts 8 (corporal injury on Negrete) and 9 (assault on Negrete with a deadly weapon). The jury was unable to reach verdicts on counts 1 (attempted murder of Officer Norem) and 10 (false imprisonment of Negrete), and the court declared a mistrial as to those two counts.

*Retrial*

On June 15, 2015, the People filed a second amended information that (as pertinent here) recharged Hernandez with count 1 (attempted murder of Officer Norem) and count 10 (false imprisonment of Negrete), and added an 11th count: misdemeanor spousal battery (count 11: Pen. Code, § 243, subd. (e)(l)). On that same day Hernandez pleaded guilty to counts 10 and 11, and he admitted the truth of the count 10 personal-use-of-a-deadly-weapon enhancement allegation (Pen. Code, § 12022, subd. (b)(1)).

The second jury trial commenced about a week later on the sole remaining count—count 1 (attempted murder of Officer Norem)—as to which the court had declared a mistrial at the first trial. The jury found Hernandez guilty of count 1 and found to be true the count 1 peace-officer and personal-infliction-of-great-bodily-injury enhancement allegations.

*Sentencing*

On July 31, 2015, the court sentenced Hernandez to an indeterminate prison term of life with a seven-year minimum parole eligibility period for his count 1 attempted murder conviction, plus a determinate term of 11 years, which (as pertinent here) included a consecutive one-year term for his conviction of count 11 (misdemeanor spousal battery).

*Contentions and holdings*

Hernandez contends his count 1 attempted murder conviction should be reversed because his trial counsel rendered ineffective assistance in violation of Hernandez's rights under the Sixth Amendment to the federal Constitution by failing to object to the

4

admission of his wife's (Negrete's) testimony that he had told her in confidence that he did not like police officers, was not afraid of them, and would harm or kill them to avoid going to jail. He claims his statements to Negrete were made in confidence and, thus, defense counsel should have objected to Negrete's testimony about those statements on the ground the statements were subject to the marital communications privilege in Evidence Code section 980, or he should have moved to sever the attempted murder charge in order to avoid the exception to that privilege in Evidence Code section 985, subdivision (a) (hereafter Evidence Code section 985(a)).

The Attorney General responds that the marital communications privilege did not apply, and thus defense counsel's failure to attempt to invoke the privilege or move to sever the charges did not constitute ineffective assistance of counsel. The Attorney General also argues (and Hernandez does not dispute) that the second amended abstract of judgment should be corrected to reflect that the court imposed (in addition to an indeterminate term of life in prison) a determinate term of 11 years rather than 10 years.

We hold the marital communications privilege did not apply and thus Hernandez's claim that his trial counsel provided ineffective assistance fails. Accordingly, we affirm the judgment. However, we remand the case with directions to correct the second amended abstract of judgment to reflect the court's imposition of (1) the consecutive one-year prison term for Hernandez's count 11 conviction, and (2) an 11-year, not a 10-year, total determinate prison sentence in addition to the indeterminate life sentence.

5

FACTUAL BACKGROUND[1]

A. *The People's Case*

Hernandez and Negrete were married in 2002.  They were still married at the time of both trials in this case.

On October 25, 2012, Hernandez and Negrete were staying at the American Inn, which is close to SR-91 in Riverside County.  Negrete testified that both she and Hernandez were habitual heroin users.  Hernandez, who had slept elsewhere, returned to the hotel room between 10:00 and 11:00 a.m. that morning.   He was acting paranoid and slammed the door when he entered the room.  Hernandez told her to shut up and get by the bed, and she complied.  He pushed the dresser against the door, put the mattress against the window, picked up a screwdriver, grabbed her hair back with his left hand, and put the pointy end of the screwdriver against the jugular vein in Negrete's neck with his other hand.

Hernandez held the screwdriver against Negrete's neck for about an hour.  During that hour he moved her around the room, threatened to kill her, and would not allow her to leave.  At some point during this incident, Hernandez scraped Negrete's face with the tip of the screwdriver, causing her face to bleed a little bit.  Hernandez left the hotel at

---

[1]    The following factual background is derived from the evidence presented at the first trial.  Because Hernandez does not challenge the sufficiency of the evidence, and the evidence presented at the second trial is largely duplicative, we need not summarize it here.  To the extent the evidence presented at the second trial is relevant to the issues presented on appeal, it will be discussed, *post*, in the discussion.

around 1:00 p.m. He returned between 5:00 and 6:00 p.m. to bring Negrete some food and then left again.

Several hours later, about 9:50 p.m., CHP Officer Norem received a dispatch broadcast about a distraught and possibly suicidal Hispanic male on the La Sierra overpass at SR-91. When Officer Norem responded to the location in his patrol car, he saw Hernandez sitting on the overpass pedestrian walkway next to the fence over the westerly lanes of the freeway.

When Officer Norem approached Hernandez to do a welfare check for everyone's safety, Hernandez got up and began climbing up the fence toward the freeway. While Hernandez was climbing up the fence, Officer Norem grabbed his right leg to keep him from jumping onto SR-91.

Hernandez responded by slashing at Officer Norem with a Swiss Army knife that had a three-inch blade. Hernandez cut and stabbed Officer Norem several times with the knife. Officer Norem received a cut across his face that ruptured his right eyeball, puncture wounds on his arm and back, and a gash on his right elbow. Even though he was being stabbed and cut, Officer Norem continued to hold Hernandez's leg to keep him from jumping onto SR-91 below.

Officer Asbury and Sergeant Walker, who were off-duty peace officers, and Matz, a concerned citizen, stopped to help Officer Norem. Hernandez swung the knife at them as they were attempting to assist Officer Norem. A short time later another CHP officer with a shotgun loaded with nonlethal beanbag ammunition arrived at the scene and shot Hernandez, who then fell from the fence and was taken into custody.

7

The entire incident was recorded by the mobile audio/video recording system installed in Officer Norem's patrol car. The video recording was played for the jury.

Negrete testified that on previous occasions during their 12-year relationship, Hernandez told her he did not like the police and he would kill a policeman who tried to arrest him.

B. *Defense Case*

The defense rested without presenting any evidence.

DISCUSSION

I. *CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL*

Hernandez contends his conviction at the second trial for the attempted murder of Officer Norem charged in count 1 should be reversed because his trial counsel rendered ineffective assistance in violation of Hernandez's rights under the Sixth Amendment to the federal Constitution by failing to object to the admission of his wife Negrete's testimony that he had told her in confidence that he did not like police officers, he was not afraid of them, and he would harm or kill them to avoid going to jail. He contends his statements to Negrete were made in confidence and, thus, defense counsel should have objected to Negrete's testimony about those statements on the ground the statements were subject to the marital communication privilege (Evid. Code, § 980) or moved to sever the attempted murder charge in order to avoid the exception to that privilege codified in Evidence Code section 985(a). We reject these contentions and affirm Hernandez's count 1 conviction.

8

A. *Background*

1. *Preliminary hearing*

As pertinent here, in March 2014 Hernandez was charged in a second amended felony complaint with the commission of six crimes against Negrete.[2] During the April 2014 preliminary hearing, the prosecutor asked Negrete how many times Hernandez had physically abused her during their relationship. Negrete replied, "Maybe about six." She testified that on one occasion when she tried to go to work he forced her to stay in the garage where they were living for about a half an hour by closing and chaining the garage door, waving a machete at her while telling her she was not going to go anywhere, then "whipp[ing]" her "hard" on her back with the flat part of the machete blade, making her cry. On another occasion Hernandez hurt her again by cutting her elbow with a knife or box cutter. Hernandez also hit Negrete with a closed fist and held her by her hair in front of a smoke shop. She testified that a man ran up and "kind of like sav[ed her] life" when Hernandez fought with that man and she was able to run away.

On cross-examination, Negrete acknowledged there were times when she was "physical with [Hernandez]." She explained, "I had to be. I mean, I had to protect myself too."

_____

[2] The second amended felony complaint charged Hernandez with committing the following six crimes against Negrete: (1) corporal injury on a spouse (count 9: Pen. Code, § 273.5, subd. (a)); (2) assault with a deadly weapon (a utility knife) (count 10: Pen. Code, § 245, subd. (a)(l)); (3) false imprisonment (count 11: Pen. Code, § 236); (4) corporal injury on a spouse (count 12: Pen. Code, § 273.5, subd. (a)); (5) assault with a deadly weapon (a screwdriver) (count 13: Pen. Code, § 245, subd. (a)(l)); and (6) false imprisonment (count 14: Pen. Code, § 236).

a. *Hernandez's statements to Negrete*

Negrete indicated at the preliminary hearing that during the incidents of physical abuse, she would tell him, "[I]f you're going to hit me, I'm going to call the police." Defense counsel asked her, "Did that work?" Negrete replied, "No. Made it worse." Defendant's counsel also asked her whether Hernandez ever told her anything about his feelings towards the police. Negrete responded that Hernandez said he did not like the police.

Negrete also indicated the physical abuse got worse during the two-month period before the incident in the motel room on October 25, 2012. She testified she had truthfully told a detective that, during that period of time, Hernandez "always told [her], 'I ain't afraid of cops. I don't give a shit. I'll kill a cop.' "

2. *First trial*

During direct examination at the first trial, Negrete testified that, at some point prior to the incident in the motel room when Hernandez held the screwdriver against her neck and threatened to kill her, he told her he did not like the police and, "if he could, he'd kill them if they ever came around him or tried to arrest him." She indicated that Hernandez made similar statements a couple times during the 12 years she had been with him. Defense counsel did not object to either the prosecutor's questions that elicited this testimony or Negrete's responses. On cross-examination Negrete indicated Hernandez might have made those statements "five years ago."

3. *Second trial and defense counsel's comments about the marital privilege*

Before the second trial commenced, defense counsel indicated to the court that he had been thinking about the marital privilege and that he wanted to put on the record that he had researched both Evidence Code section 972[3] and the marital communications privilege codified in Evidence Code section 980.[4] Noting there are exceptions to the marital privilege, and apparently referring to Evidence Code section 985, subdivision (b) (hereafter Evidence Code section 985(b)),[5] he stated that "[t]he [marital] privilege does not apply if there's a crime committed against the spouse that is interrelated with a crime against a third party." Defense counsel then told the court he believed the marital privilege did not apply. He explained that because "the conduct of my client [Hernandez] vis-a-vis [Negrete occurred] . . . right before the crimes involving Officer Norem and others, . . . I do think the exception [under Evidence Code section 985(b)] applies, and

_____

[3]     Evidence Code section 972 provides in part: "A married person does not have a privilege under this article in:  [¶] . . . [¶]  (e) A criminal proceeding in which one spouse is charged with:  [¶]  (1) A crime against the person or property of the other spouse . . . , whether committed before or during marriage.  [¶]  (2) A crime against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse, whether committed before or during marriage."

[4]     Evidence Code section 980 provides in part:  "Subject to Section 912 and except as otherwise provided in this article, a spouse . . . , whether or not a party, has a privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife."

[5]     Evidence Code section 985(b) provides:  "There is no privilege under this article in a criminal proceeding in which one spouse is charged with . . . [a] crime committed at any time against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse."

11

therefore, I don't think there's a marital privilege." He added, "I don't think the [marital] privilege applies either to husband and wife or to confidential communications." The court responded, "I agree with that. And [Negrete has] testified before as well. I just don't think there's a problem with her testifying, especially in light of the crimes for which [Hernandez] has pled and has been convicted of."[6]

During direct examination at the second trial, Negrete testified again that, at some point prior to October 25, 2012, Hernandez told her "[h]ow he hated cops" and that, "if they were to ever arrest him or come towards him," he would "lash out at them" and do whatever he could to "hurt a cop." Negrete testified she remembered Hernandez "saying . . . if anybody was to ever call the cops on him or something like that, . . . he'd kill a cop." Negrete explained that Hernandez said those types of things about six times during their "off and on" relationship when they were engaged in "physical fights." Defense counsel did not object to either the prosecutor's questions that elicited this testimony or Negrete's responses. On cross-examination, Negrete testified that Hernandez would tell her, "I don't care if you call the cops. I ain't afraid of them. I'll do whatever it takes to, you know, hurt them."

---

[6] As already discussed, Hernandez pleaded guilty to count 10 (false imprisonment of Negrete) and count 11 (misdemeanor spousal battery upon Negrete) before the second trial commenced.

B. *Applicable Legal Principles*

1. *Ineffective assistance of counsel*

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)  To show prejudice, the defendant must show a reasonable probability he would have received a more favorable result had his counsel's performance not been deficient.  (*Strickland*, at p. 694; *Ledesma*, at pp. 217-218.)

2. *Marital communications privilege*

The California Supreme Court has explained that "California recognizes two marital privileges.  First, a spouse may refuse to testify against the other spouse (spousal testimony privilege).  (Evid. Code, § 970.)  Second, a spouse may refuse to disclose or may prevent the other spouse from disclosing confidential communications between them during their marriage (marital communications privilege).  (Evid. Code, § 980.)"  (*People v. Sinohui* (2002) 28 Cal.4th 205, 208 (*Sinohui*).)

Under the marital communications privilege in Evidence Code section 980, subject to certain exceptions, one spouse may prevent the other spouse from disclosing a "communication . . . made in confidence" between them during their marriage.  (*Ibid.*; see fn. 3, *ante*.)  However, "[i]f the facts show that the communication was not intended to be kept in confidence the communication is not privileged."  (*People v. Carter* (1973) 34 Cal.App.3d 748, 752 (*Carter*).)  "A communication between married persons is

13

'presumed to have been made in confidence and the opponent of the claim of privilege has the burden to establish that the communication was not confidential.' " (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 220; Evid. Code, § 917.)

The purpose of the marital communications privilege is to preserve marital harmony. (See *Sinohui*, *supra*, 28 Cal.4th at p. 213.) In order to balance this purpose against the countervailing principle that the public has a right to hear evidence, the Legislature has created exceptions to the privilege where one spouse commits a crime against the other. (*Ibid.*; see Evid. Code, §§ 985, subds. (a) & (b), 972, subd. (e)(l), (2); see fn. 3, *ante*.) "These exceptions rest on 'the self-evident premise that marital harmony would be nonexistent in criminal actions where' one spouse 'is the victim of a crime committed by' the other spouse." (*Sinohui*, at p. 213.)

"Because privileges 'prevent the admission of relevant and otherwise admissible evidence,' they 'should be narrowly construed.' " (*Sinohui*, *supra*, 28 Cal.4th at p. 212.) "Applying this maxim in the marital privileges context, our courts have broadly construed the exceptions to these privileges." (*Ibid.*)

a. *Exceptions in Evidence Code section 985*

"Certain exceptions to the existence of the [marital communications] privilege are found in Evidence Code section 985 which states in part: 'There is no privilege under this article in a criminal proceeding in which one spouse is charged with: [¶] (a) A crime committed at any time against the person or property of the other spouse or of a child of either. [¶] (b) A crime committed at any time against the person or property of a third

14

person committed in the course of committing a crime against the person or property of the other spouse.' " (*Carter*, *supra*, 34 Cal.App.3d at p. 752.)

C. *Analysis*

As noted, Evidence Code section 985(a) creates an exception to the marital privilege and provides in part:  " 'There is no privilege under this article in a criminal proceeding in which one spouse is charged with . . . [a] crime committed at any time against the . . . other spouse.' "

Hernandez acknowledges that the exception to the marital communications privilege set forth in Evidence Code section 985(a) "applies" in this case.[7]  He also asserts "Negrete's testimony regarding [his] confidential communications would therefore not have been privileged in a criminal proceeding in which [he] was charged with crimes against his wife."

Hernandez then acknowledges "[i]t is true that [he] was charged in these proceedings with crimes in which his spouse [Negrete] was the victim."  Indeed, as detailed in footnote 2, *ante*, the second amended felony complaint, on which the preliminary hearing was based, charged Hernandez with committing six crimes against Negrete.  Following the preliminary hearing, during which Negrete testified about Hernandez's acts of physical abuse and his incriminating statements, Hernandez was charged in an amended information with the commission of three crimes against her:  (1)

---

7      Specifically, Hernandez asserts that "[t]he only one of [the] exceptions [to the marital communications privilege] that applies is the exception in Evidence Code section 985[(a)]."

15

corporal injury on a spouse (count 8); (2) assault with a deadly weapon (count 9); and (3) false imprisonment (count 10). He faced those charges at the first trial. The jury found he was not guilty of counts 8 and 9, but it was unable to reach a verdict on count 10 and the court declared a mistrial as to that count. Hernandez pleaded guilty to count 10 before the second trial commenced. Thus, at the second trial, Hernandez faced no charges that he committed a crime against Negrete.

Hernandez concedes that because he "was charged [at the preliminary hearing and the first trial] with crimes in which his spouse [Negrete] was the victim, . . . Negrete's testimony [during those proceedings] regarding [his marital] communications was not privileged."

We conclude that (1) under the exception in Evidence Code section 985(a), Hernandez was not entitled—at the preliminary hearing, the first trial, or the second trial—to the protection of the marital communications privilege with respect to Negrete's testimony that he told her did not like police officers, he was not afraid of them, and he would harm or kill them if they tried to arrest him; and thus (2) Hernandez's trial counsel[8] did not provide ineffective assistance by failing to attempt to prevent Negrete from testifying about Hernandez's statements by asserting the marital communications privilege. Negrete gave essentially the same testimony at the preliminary hearing and both trials regarding statements Hernandez made to her. She testified that during incidents of physical abuse, Hernandez told her he did not care if she called the police, he

---

8    Stuart Sachs represented Hernandez at the preliminary hearing and both trials.

16

did not like the police, he was not afraid of them, and he would harm or kill them if they tried to arrest him. As noted, Hernandez concedes he was not entitled to the protection of the marital communications privilege at either the preliminary hearing or the first trial because he was being tried on charges he had committed crimes against his wife, Negrete. When Negrete testified at the preliminary hearing and the first trial about Hernandez's incriminating marital statements, those statements lost their confidential character and Hernandez lost the right to invoke the marital communications privilege to prevent Negrete from testifying about those statements at the second trial, which resulted in Hernandez's conviction of the attempted murder of Officer Norem charged in count 1. *People v. Johnson* (1991) 233 Cal.App.3d 425 (*Johnson*) is instructive.

In *Johnson*, the defendant was convicted following a trial on charges he committed crimes against two victims, neither of whom was his wife. (*Johnson*, *supra*, 233 Cal.App.3d at p. 433.) At the time of trial, he was not charged with the commission of a crime against his wife. (See *ibid.*) The defendant challenged his convictions on appeal, claiming the trial court erred by rejecting his assertion of the marital communications privilege through which he attempted to prevent his wife from testifying about an incriminating statement he had made during an incident in which he beat her. (*Id*. at p. 437.) The defendant's wife had previously testified at the preliminary hearing regarding the beating and the defendant's statement. (*Ibid*.) The criminal complaint, on which the preliminary hearing was based, had charged the defendant with attempting to murder his wife, and that charge was still pending at the time of the preliminary hearing. (*Ibid*.) On appeal, the defendant claimed that because that charge was *dismissed before*

17

*trial*, the statement he made to his wife should have been afforded the protection of the marital communications privilege at trial. (*Ibid.*) Rejecting that claim, the Court of Appeal held that the trial court properly admitted the wife's testimony about the statement. (*Ibid.*) The *Johnson* court explained that, "[o]nce disclosed during [defendant's wife]'s testimony at the preliminary hearing, *the statements lost their confidential character.* (Evid. Code, § 912, subd. (a).) After the statements were made public, the marital communication privilege could no longer be asserted. The reason for the privilege—to encourage confidences between spouses for the benefit of the marital relationship—ceased to operate when confidentiality was lost." (*Ibid.*, italics added.)

Similarly here, once Hernandez's statements to his wife were properly made public during both the preliminary hearing and the first trial, under the exception to the marital communications privilege set forth in Evidence Code section 985(a), Hernandez could not assert that privilege at the second trial even though he no longer faced any charge he had committed a crime against Negrete. (See *Johnson*, *supra*, 233 Cal.App.3d at pp. 437-438.)

Hernandez asserts, however, that "in a trial on *only* the attempted murder charge[,] Negrete's testimony would have been inadmissible as a confidential marital communication." Thus, he contends, if an objection to Negrete's testimony under the marital communications privilege had been made and overruled, reasonably competent counsel "[would have] moved to sever the attempted murder charge" from the charges in which Negrete was the named victim. This contention is unavailing.

18

Regarding the confidential marital communications privilege, the California Supreme Court has explained that " '[w]hile a communication between a husband and wife is presumed to be confidential, if the facts show that the communication was not intended to be kept in confidence, the communication is not privileged.' " (*People v. Cleveland* (2004) 32 Cal.4th 704, 744; see *Carter*, *supra*, 34 Cal.App.3d at p. 752.) California courts have held that a threat made by a husband against third persons while he is criminally victimizing his wife is not protected by the confidential marital communications privilege because affording the protection of that privilege to shield such a threat would not serve the underlying public policy considerations that seek to preserve the confidence and tranquility of the marital relationship, and thus the husband does not have a reasonable expectation of confidentiality as to such a threat. (*Carter*, at p. 753; *Johnson, supra,* 233 Cal.App.3d at p. 438.)

*Carter* is instructive. In that case the defendant's wife left him and moved to Chicago, and she remained in communication with a former neighbor. (*Carter*, *supra*, 34 Cal.App.3d at p. 750.) The defendant later visited his wife in Chicago, found a letter from the neighbor, became angry about its contents, and brutally attacked his wife. (*Ibid.*) During the assault he asked her who had assisted her in moving to Chicago. (*Ibid.*) When she told him the former neighbor had helped her, the defendant said, " 'I'm going to kill them all.' " (*Ibid.*) The defendant later shot and killed the neighbor, and defendant was charged with her murder. (*Id.* at pp. 750-751.) A jury convicted the defendant of first degree murder, and he appealed his conviction, claiming the trial court erred in permitting his wife to testify to his statement " 'I'm going to kill them all' "

19

because (he maintained) it was a privileged confidential marital communication. (*Id.* at p. 752.) The Court of Appeal held that the defendant's threat against a third person (the former neighbor), which he communicated to his wife in the course of his criminally victimizing her, was not a privileged confidential marital communication as a matter of public policy. (*Id.* at pp. 752-753.) The *Carter* court explained:

> "The privilege afforded to a confidential marital communication is based on considerations of *public policy* which seek to preserve the confidence and tranquility of the marital relationship. The essence of a confidential communication between spouses is that it springs from the confidence which exists between them because of the marital relationship. [¶] *These public policy considerations would not be served by shielding as confidential and privileged threats against third persons made by one spouse in the course of criminally victimizing the other spouse.* Hence the exceptions embodied in Evidence Code section 985 are universally recognized. [¶] . . . [¶] Thus *defendant could have no reasonable expectation of confidentiality as to the threats against third persons made by him during the course of committing a violent assault on his wife.* Those were simply not statements which would qualify as communications made in confidence and thereby gain the protection of the statutory privilege or the public policy which underlies that privilege." (*Ibid.*, italics added.)

Here, substantial evidence supports a reasonable finding that Hernandez made the challenged statements, including his threat to kill any police officer who attempted to arrest him, to his wife in the course of criminally victimizing her. Negrete testified that Hernandez made those statements to her about six times prior to the incidents at the American Inn and the overpass in October 2012, while they were engaged in "physical fights." Negrete's testimony establishes that those "physical fights" involved Hernandez's criminally victimizing her, not mutual combat as he contends. At Hernandez's preliminary hearing, Negrete testified at length about his physically abusive behavior

20

during some of those incidents.  As discussed more fully, *ante*, Negrete testified about prior instances in which Hernandez falsely imprisoned her, threatened her with a machete, "whipp[ed] " her "hard" on her back with the flat part of the machete, cut her elbow with a box cutter or utility knife, and hit her with a closed fist in front of a smoke shop.  Although Negrete acknowledged there were times when she was "physical with [Hernandez]," she explained, "I had to be.  I mean, I had to protect myself too."  Negrete testified at the second trial that Hernandez would tell her, "I don't care if you call the cops.  I ain't afraid of them.  I'll do whatever it takes to, you know, hurt them."

Because substantial evidence shows Hernandez communicated the challenged statements about the police to Negrete while he was criminally victimizing her, we conclude those statements were not protected by the confidential marital communication privilege because affording the protection of that privilege to shield such statements would not serve the underlying public policy considerations that seek to preserve the confidence and tranquility of the marital relationship, and thus Hernandez did not have a reasonable expectation of confidentiality as to such statements.  (See *Carter*, *supra*, 34 Cal.App.3d at pp. 752-753; *Johnson*, *supra*, 233 Cal.App.3d at p. 438.)  We further conclude that because Hernandez's statements to Negrete were not privileged, Hernandez has failed to meet his burden of showing his trial counsel provided ineffective assistance by failing to assert the confidential marital communication privilege or move to sever the charges in which Negrete was the named victim from the other charges involving the other victims.  Accordingly, we affirm the judgment.

## II. *ABSTRACT OF JUDGMENT*

The Attorney General argues, and Hernandez does not dispute, that the second amended abstract of judgment "should be amended to reflect [Hernandez]'s actual sentence."  We agree.

The court sentenced Hernandez to an indeterminate prison term of life with a seven-year minimum parole eligibility period for his count 1 attempted murder conviction, plus a total determinate term of 11 years, which included a consecutive one-year term for his count 11 conviction of misdemeanor spousal battery (Pen. Code, § 243, subd. (e)(1)).

However, the second amended abstract of judgment filed on October 22, 2015, fails to reflect the court's imposition of the consecutive one-year term for Hernandez's count 11 conviction, and it incorrectly shows the court imposed a total determinate term of 10 years.  As noted, the court imposed a total determinate prison term of 11 years, not 10 years.

Accordingly, the case must be remanded to the superior court with directions to correct the second amended abstract of judgment to reflect the court's imposition of (1) a consecutive one-year prison term for Hernandez's count 11 conviction, and (2) an 11-year, not a 10-year, total determinate prison sentence in addition to the indeterminate life sentence.

## DISPOSITION

The judgment is affirmed.  The matter is remanded to the superior court with directions to (1) correct the second amended abstract of judgment (filed on Oct. 22, 2015)

22

to reflect both the court's imposition of a consecutive one-year prison term for Hernandez's count 11 conviction of misdemeanor spousal battery (Pen. Code, § 243, subd. (e)(1)), and the court's imposition of an 11-year (not a 10-year) total determinate prison sentence in addition to the indeterminate life sentence; and (2) forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.