CANTIL-SAKAUYE, C. J.,
Concurring and Dissenting.—This court originally affirmed the judgment of death in this case, rejecting defendant Gary Lee Grimes’s argument that the exclusion of certain hearsay statements at his trial amounted to prejudicial error. After granting rehearing, a majority of this court now agrees with defendant that these statements should have been admitted under the exception to the hearsay rule applicable to statements against interest. (Evid. Code, § 1230.) The majority also concludes that although the exclusion of these statements was harmless at the guilt phase, the perceived possibility of a different outcome at the penalty phase means that the judgment of death must be reversed.
I respectfully disagree with the majority’s assessments of error and prejudice. This court was correct when it originally found no reversible error in the trial court’s rulings as to the disputed statements. On rehearing, I have given careful reconsideration to these issues and find even more reason now to *740 conclude that the trial court did not abuse its discretion in excluding one of these statements, and no reasonable possibility that introduction of the other proffered evidence would have affected the outcome at the guilt or penalty phases of defendant’s trial. Therefore, while I concur with the majority insofar as it affirms the guilty verdict and the special circumstance findings, I dissent from its reversal of the judgment of death.
Prior to trial, defendant sought admission of statements coperpetrator John Morris made to an acquaintance, Misty Abbott, on the day of the killing, and to a fellow inmate, Albert Lawson, while Morris and Lawson were held in jail a few days later. Morris committed suicide prior to trial and was therefore unavailable to testify. As to both conversations, defendant’s offer of proof included several statements made by Morris that were clearly against Morris’s penal interest. According to Abbott, Morris told her that “he murdered the little old lady,” that “it didn’t work . . . strangling her . . . and so he stabbed her,” and that “she wouldn’t die choking her, so he had to get a knife from the kitchen.” Morris also told Lawson that he “killed that old lady,” saying, “I stabbed her. Also I grabbed her by the throat.” The trial court correctly recognized that these statements were against Morris’s penal interest when made, and thus found them admissible under the statement against interest exception to the hearsay rule.
Defendant argues that the trial court also should have admitted other hearsay statements Morris made to Abbott and Lawson, the inculpatory attributes of which are far less obvious. According to the offer of proof by defendant’s trial counsel, when a detective asked Abbott if defendant and a third perpetrator, Patrick Wilson, had participated in the killing, her response was, “no, Johnny [Morris] told her after he quote did the lady, unquote that [defendant] and [Wilson] looked at him as if they were saying, what in the hell are you doing, dude.” Defendant also offered Morris’s statement to Lawson that, in connection with the home invasion and attack, defendant and Wilson “were in the house but took no part in the actual killing.” Defendant asserts that these statements by Morris, although hearsay, also qualify for the against-interest exception, and claims that their exclusion by the trial court amounts to reversible error at both the guilt and penalty phases. The majority agrees with defendant, at least in part. I do not.
The exception to the hearsay rule for statements against interest appears at Evidence Code section 1230. It provides, “Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant’s pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability . . . that a reasonable man in his position would not have made the *741 statement unless he believed it to be true.” (Evid. Code, § 1230.) ‘“The proponent of such evidence must show that the declarant is unavailable, that the declaration was against the declarant’s penal interest when made and that the declaration was sufficiently reliable to warrant admission despite its hearsay character.” (People v. Duarte (2000) 24 Cal.4th 603, 610-611 [101 Cal.Rptr.2d 701, 12 P.3d 1110].) The against-interest exception to the hearsay rule is ‘“inapplicable to evidence of any statement or portion of a statement not itself specifically disserving to the interests of the declarant” (People v. Leach (1975) 15 Cal.3d 419, 441 [124 Cal.Rptr. 752, 541 P.2d 296]; see also People v. Duarte, at p. 612), and ‘“a declaration against penal interest must be ‘distinctly’ against the declarant’s penal interest” (People v. Shipe (1975) 49 Cal.App.3d 343, 354 [122 Cal.Rptr. 701]; see also People v. Traylor (1972) 23 Cal.App.3d 323, 330-331 [100 Cal.Rptr. 116]). Whether or not a statement is against penal interest can be determined only by considering ’’the statement in context.” (People v. Lawley (2002) 27 Cal.4th 102, 153 [115 Cal.Rptr.2d 614, 38 P.3d 461] (Lawley).) Understood in context, even a statement that admits to criminal wrongdoing may not be against the declarant’s penal interest when made. (People v. Duarte, at pp. 611-612.)
A ruling by the trial court as to whether a hearsay statement is admissible as being against the declarant’s penal interest is reviewed for abuse of discretion. (Lawley, supra, 27 Cal.4th at p. 153.) Whether a statement meets the criteria for this exception “goes to the core of the question of basic trustworthiness, and hence must be deemed entrusted to the court’s discretion.” (People v. Gordon (1990) 50 Cal.3d 1223, 1252 [270 Cal.Rptr. 451, 792 P.2d 251].) Such a ruling “will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.” (People v. Rodriguez (1999) 20 Cal.4th 1, 9-10 [82 Cal.Rptr.2d 413, 971 P.2d 618].) In applying the abuse of discretion standard, a reviewing court does not wholly replace the trial court’s judgment with its own; if a reasonable basis existed to exclude a statement, that means the trial court did not abuse its discretion in doing so, even assuming that a reasonable argument also existed for admitting it. (See People v. Valdez (2012) 55 Cal.4th 82, 144 [144 Cal.Rptr.3d 865, 281 P.3d 924] [observing that in circumstances where the trial court reasonably could have chosen to admit or exclude evidence, it does not abuse its discretion by choosing either path]; People v. Gordon, at p. 1253 [same].)
The majority acknowledges that the abuse of discretion standard applies here—but then spots what it perceives as a material mistake of law by the trial court and on that basis conducts what amounts to ele novo review. My review of the record on rehearing leads me to disagree with this approach. The trial court correctly ascertained the crux of the declaration against penal interest rule—that a statement must be “specifically disserving” of the declarant’s penal interest to qualify for admission under this exception to the *742 hearsay rule (People v. Leach, supra, 15 Cal.3d at p. 441)—and the record does not establish that the judge misapplied this principle in excluding Morris’s statement about the looks he received from defendant and Wilson after killing the victim.[1] Applying the appropriate standard of review, I would hold that the trial court did not make an arbitrary or absurd decision when it excluded this statement because the trial court reasonably could have found that due to this statement’s inherent ambiguity, defendant failed to show that it was distinctly and specifically against Morris’s penal interest when made. (See Andrews v. U.S. (D.C. 2009) 981 A.2d 571, 576 [“if there are two possible interpretations of [a purported] statement [against penal interest] . . . one of which would subject [the declarant] to criminal liability while the other would not, the necessary indicia of trustworthiness are absent”].)
In other statements he made to Abbott, Morris told her that he had killed the victim by strangling and stabbing her. The trial court properly found these statements admissible. In contrast, Morris’s tangential remark that related how his cohorts reacted to the killing once it was complete does not unambiguously possess the distinctly incriminating connotations that the against-interest exception demands. Significantly, Morris’s statement did not explain why he thought defendant and Wilson looked at him in the manner he described. Morris’s description of the looks as signifying “what in the hell are *743 you doing, dude” admits to several interpretations. Among them, the statement may have reflected Morris’s impression that defendant and Wilson were surprised by the difficulty that Morris had in killing the victim. Or Morris could have believed that defendant and Wilson were annoyed or frustrated that the killing had taken as long as it did. Or Morris could have perceived them as amused by the circumstances of the killing; “what in the hell are you doing” does not necessarily describe a negative reaction, depending on how Morris delivered these words. Other interpretations, even less disserving of Morris’s penal interest, also are possible. Under any of these interpretations, viewed in context Morris’s observation regarding the reactions of others to the violent actions he described in his other statements to Abbott was a collateral assertion that was insufficiently disserving of his penal interest as to possess the trustworthiness and reliability demanded by the against-interest exception.
The most disserving construction of this statement would cast it as an implicit admission by Morris that he alone had made the decision to kill the victim—causing defendant to register surprise at the fact that Betty Bone was killed at all. But this is a dubious interpretation of Morris’s statement. As the majority observes, defendant himself admitted to police that, knowing a robbery was planned, he helped Morris find his gun, and that before they entered the victim’s residence Morris saw a woman taking out her trash and said, “ ‘ “Fuck it, we’ll just fuckin’ kill her an’ look at the house (Maj. opn., ante, at p. 721.) Furthermore, in his statement to police defendant said that he had observed Morris strangling Bone, heard Morris say that she would not die, saw Morris look for a knife in the kitchen, and then saw or heard him stabbing Bone. Given these facts, it seems unlikely that defendant was surprised afterward at the fact of the killing. More fundamentally, even assuming the possibility of such an interpretation, the presence of other readings of the statement whereby it was not specifically and distinctly against Morris’s penal interest when made means that the trial court did not abuse its discretion in declining to admit the statement.[2]
The majority acknowledges the ambiguous character of this statement, and therefore cannot and does not state that it was “specifically disserving,” as our precedent demands for the admission of a statement, or a portion of a *744 statement, under Evidence Code section 1230. (People v. Leach, supra, 15 Cal.3d at p. 441; see also People v. Duarte, supra, 24 Cal.4th at p. 612.) Grasping for an alternative rationale, the majority nevertheless finds the against-interest exception applicable because “under any conceivable interpretation of the statement, it tended to underscore Morris’s responsibility for the crime, rather than diminish it,” the statement “elaborated on [Morris’s] confession,” and the statement was “not practically separable from the remainder of [Morris’s] statements” to Abbott.[3] (Maj. opn., ante, at p. 717.) As I will explain, the last of these assertions is demonstrably false. The other two simply replace the existing standard for declarations against interest with a nebulous and less rigorous approach that will be more difficult for courts to apply and less likely to screen out untrustworthy hearsay.
With regard to the majority’s assertion that Morris’s statement about the looks he received was “not practically separable from the remainder of [Morris’s] statements” to Abbott (maj. opn., ante, at p. 717), I cannot see how this is so. Unlike situations in which a contextual fact is “inextricably tied to and part of’ a specifically disserving statement (e.g., People v. Samuels (2005) 36 Cal.4th 96, 121 [30 Cal.Rptr.3d 105, 113 P.3d 1125]), in which case stripping the contextual fact would require alteration of the incriminating statement itself, Morris’s statement describing the looks he received was readily separable from his admissions that he had strangled and stabbed the victim. It takes no great leap of imagination to appreciate how Abbott could have testified fully and coherently to Morris’s statements about strangling and stabbing Bone without also testifying to Morris’s collateral statement about the looks he received from defendant and Wilson afterward.
As for the majority’s other rationales, the accepted test for admissibility of a statement under the against-interest exception is not whether the statement somehow tends to “underscore” the declarant’s responsibility for a crime, nor whether it “elaborate[s] on” an actual statement against interest (maj. opn., ante, at p. 717), but the more stringent standard of whether the statement was so “specifically disserving” (People v. Leach, supra, 15 Cal.3d at p. 441) of the declarant’s interests “that a reasonable man in his position would not have made the statement unless he believed it to be true” (Evid. Code, § 1230). As *745 discussed above, this standard has not been met here. By watering down the standard for admission under the against-interest exception, the majority erroneously “assumes that a declaration against interest involves a truth-telling frame of mind which carries over to statements other than those against interest. But the presence of the declaration against interest does not add to the trustworthiness of neutral and self-serving statements. They would seem equally trustworthy or unreliable whether accompanied by a declaration against interest or not.” (Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule (1944) 58 Harv. L.Rev. 1, 62; see also Williamson v. United States (1994) 512 U.S. 594, 600 [129 L.Ed.2d 476, 114 S.Ct. 2431] [“The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement’s reliability”].)
The majority’s expansion of the against-interest exception represents a significant and, in my view, misguided shift in our interpretation of Evidence Code section 1230. In effect, the majority endorses a form of bootstrapping whereby a specifically disserving statement can tow related collateral assertions within a larger, generally incriminating narrative into the against-interest exception. This is not merely a “contextual approach,” as the majority characterizes it (maj. opn, ante, at p. 717), since the “specifically disserving” standard already requires the consideration of a statement’s context. (E.g., People v. Duarte, supra, 24 Cal.4th at p. 612.) Instead, the majority’s invocation of “context” provides cover for its dilution of the prevailing rule. This approach raises difficult questions about the necessary logical and narrative tethers, points on which the majority provides little guidance. It also retreats from our formerly rigorous enforcement of the “specifically disserving” standard (People v. Leach, supra, 15 Cal.3d at p. 441; see Lawley, supra, 27 Cal.4th at p. 154 [finding no abuse of discretion in the trial court’s exclusion of evidence that did not meet this standard]; People v. Duarte, supra, 24 Cal.4th at pp. 612-614, 618 [finding error in the trial court’s decision to admit, as a statement against interest, a statement containing portions that were not “ ‘specifically disserving’ ”]; Leach, at pp. 441-442), thereby abandoning a position consistent with the one taken by the United States Supreme Court in its construction of the parallel federal rule, Federal Rules of Evidence, rule 804(b)(3) (28 U.S.C.) (Williamson v. United States, supra, 512 U.S. at pp. 600-601 [“the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory”]). The requirement that each hearsay statement within a narrative be specifically and distinctly disserving to gain admission under the against-interest exception is not a mere formalism, for it serves the greater purpose of screening out the unreliable hearsay that clever or careless declarants often interweave with truly inculpatory facts. (See id. at pp. 599-600 [“One of the most effective *746 ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature”].) The majority’s approach compromises this screening function. In all, by substituting propinquity for the particular indicia of trustworthiness required of a statement against interest, and thereby adding a vague and imprecise gloss to what previously had been a more clear rule, the majority needlessly complicates the law regarding statements against interest and opens the door to potentially untrustworthy hearsay.
Our decision in Lawley, supra, 27 Cal.4th 102, applied the against-interest exception more faithfully and establishes that there was no abuse of discretion here. The defendant in Lawley was convicted of murder based on evidence that he hired one Seabourn to kill the victim. We held that the trial court did not abuse its discretion in admitting Seabourn’s hearsay statement that he was hired to and did kill the victim as a statement against interest, while excluding Seabourn’s statements that he had been hired by the Aryan Brotherhood for the hit, and that ‘“an innocent man was in jail for the crime.” (Id. at p. 154.) We reasoned that these latter two statements did not specifically disserve Seabourn’s penal interest—even though they arguably underscored Seabourn’s responsibility for the crime by adding details regarding his involvement, and elaborated on Seabourn’s core admission of involvement in a murder for hire. (Id. at pp. 154, 155, fn. 21.) The same reasoning applies to Morris’s statement about the looks he received after the killing. Even though Morris’s statement may have a connection to specifically disserving statements, it was itself not distinctly and specifically disserving when viewed in context, and therefore does not qualify for the against-interest exception.[4]
In sum, whereas our decision in Lawley, supra, 27 Cal.4th 102, as well as our prior rulings construing the against-interest exception appropriately recognized the difference between specifically disserving statements and statements that are merely collateral, today’s decision regrettably blurs this distinction and fails to apply the proper standard of review in concluding that the trial court erred. I therefore disagree with its finding of error.
*747 This disagreement also leads me to depart from the majority in its assessment of prejudice. The exclusion of Morris’s “what in the hell are you doing” statement forms the backbone of the majority’s prejudice analysis. But as explained above, the trial court did not abuse its discretion, and therefore did not err, in excluding this statement. With regard to the trial court’s exclusion of the other disputed evidence, even assuming error by the trial court, no reasonable possibility exists that the error affected the outcome at the guilt phase or the penalty phase of defendant’s trial.
The most reasonable interpretation of the proffered statement that defendant was in another part of the house and did not participate in the “actual killing” (and whatever similar statement Morris may have made to Abbott, as to which defendant’s offer of proof was not clear) was that he did not participate in the act of killing. But the prosecutor never argued that defendant participated in the act of killing, making this clarification beside the point. The evidence presented at trial portrayed Morris as the actual killer, and the prosecution presented no evidence that defendant had actually participated in the homicidal act. In his statement to the police, defendant said he was present in the house while Morris killed Bone, but asserted that he did not participate in the killing. Misty Abbott’s testimony concerning Morris’s description of how he killed the victim cast Morris as the sole person responsible for the actual killing.[5] Likewise, defendant’s out-of-court statement to jailhouse informant Jonathan Howe was that he never personally touched the victim and his DNA would not be found on the body. No DNA or other physical evidence linked defendant to the actual killing. As the majority observes, the prosecution did present testimony from Howe that defendant admitted he had ordered Morris and Wilson to kill the victim. However, the challenged evidence would not have countered this testimony. Morris’s statement that defendant did not participate in the “actual killing” did not conflict with Howe’s testimony that defendant admitted he ordered Morris to *748 kill Bone.[6] In short, had the jury heard a representation by Morris that defendant was not involved in the actual killing, this additional evidence would not have impacted the arguments made at trial nor the jury’s assessment of the evidence as a whole, whether at the guilt phase or the penalty phase.
This court’s decision to grant rehearing in this case has led to a careful reconsideration of defendant’s claims of error, as it should. To me, however, this review leads back to the same conclusion we drew before—that defendant’s trial involved no errors that require reversal of the judgment of death. In holding otherwise, the majority renders the against-interest exception less coherent and spots error and prejudice where none exist. I therefore dissent.
Chin, J., and Corrigan, J., concurred.

 The original majority opinion in this matter observed that the trial court relied on People v. Gatlin (1989) 209 Cal.App.3d 31 [257 Cal.Rptr. 171] (Gatlin), a somewhat factually inapposite case, in ruling on the admissibility of Morris’s statements, and noted that the trial court may have endorsed the categorical principle (as the majority phrased it) “that a declarant who has admitted to murder does not enhance his personal culpability by claiming he acted alone”—an assertion that, we observed, may not be accurate under some circumstances. Accordingly, the majority recognized that it could affirm on any ground in the record, before concluding that the trial court did not abuse its discretion in excluding Morris’s statement to Abbott about the looks he had received, and determining that any assumed error in the exclusion of other statements was harmless.
A rehearing requires a fresh look at the record. This review establishes that regardless of whether the facts of Gatlin, supra. 209 Cal.App.3d 31, were on all fours with those involved here, the trial court gleaned from that case the correct principle that “the Evidence Code section 1230 declaration against interest exception applies only to that part of the statement which is specifically disserving to the—the declarant.” (See Gatlin, at p. 44 [“Section 1230 is not applicable to evidence of any statement not itself specifically disserving to the interests of the declarant”].) Meanwhile, to the extent that the trial court may have made categorical assertions regarding certain types of hearsay statements, the record shows that the court was contemplating circumstances in which a declarant, having admitted to a crime, also said that “nobody else had any part in it” or that others “did or did not assist him”—phrasing that parallels some, but not all, of the contested statements here.
Therefore, regardless of whether the trial court may have been mistaken on a point of law pertinent to Morris’s other statements, I would not assume, as the majority does, that the trial court labored under a misunderstanding of the law in excluding Morris’s statement about the looks he received from defendant and Wilson. The inherent ambiguity of this statement (as will be examined post) meant that it was subject to exclusion on the simple basis that defendant had not shown that it was specifically disserving.

 The majority asserts that “no plausible reason” has been offered why this statement should be regarded as “any less trustworthy” than Morris’s other statements to Abbott, and that it can think of none. (Maj. opn., ante, at p. 719.) The ambiguity of Morris’s surmise about looks he received, which even the majority cannot say is specifically disserving—as juxtaposed against statements in which Monis told Abbott in no uncertain terms that he had personally strangled and stabbed the victim—supplies such a reason. And of course, the majority’s point merely sidesteps the fact that the crucial inquiry in applying the declaration against interest exception concerns whether the statement is “specifically disserving,” not a more generic trustworthiness assessment. (People v. Leach, supra, 15 Cal.3d at p. 441.)

 The majority also describes this statement as “simply an elaboration on Morris’s acknowledgment that defendant and Wilson did not participate in the murder,” and references the trial court’s supposedly similar “view[]” of the statement. (Maj. opn., ante, at p. 717, fn. 5.) In excluding the statement, the trial court stated, “The next statement that was mentioned was where Mr. Monis allegedly told Ms. Abbott that Mr. Grimes and Mr. Wilson did not take part in the killing and some other details regarding that, again, that does not appear at all to be disserving of Mr. Morris’ interest.” This shorthand description of defendant’s vague offer of proof did not involve any measured “view” regarding the meaning of Monis’s statement about the looks he received, and does not establish that the trial court perceived Monis’s statement as unambiguous.

 Furthermore, in Lawley. supra. 27 Cal.4th 102, this court did not press the limits of its imagination to devise some conceivable way that Seabourn’s collateral statements could have incriminated him. (His statement concerning the Aryan Brotherhood, for example, might have suggested gang ties.) With good reason; a statement is not specifically and distinctly disserving in every instance where judges can conceive, after the fact, some possible though nonobvious basis upon which the statement could have had an incriminating effect. (See People v. Traylor, supra, 23 Cal.App.3d at p. 331 [“The test [for applying the exception] is not whether the statement could provide a link in a chain of evidence leading to the declarant’s criminal liability, but whether the statement satisfies the reason why declarations against interest are admitted as an exception to the hearsay rule”].) The reasonable person approach codified by Evidence Code section 1230 does not presume such omniscience by the declarant.

 In one colloquy, Abbott testified as follows:
“Q: Did Mr. Monis tell you on the way to the lake that he had murdered the old lady?
“A: Yes.
“Q: Okay. And on the way to the lake, did Mr. Morris say that he had stabbed the old lady?
“A: Yes.
“Q: That he tried to strangle her first, Mr. Monis tried to strangle her first?
“A: Yes.
“Q: And Mr. Monis told you that the lady wouldn’t die; is that right?
“A: That’s right.
“Q: And Mr. Monis told you then that he went to the kitchen and got a knife and stabbed her?
“A: Yes.”

 Although Morris's grandfather testified that Monis had told him that others were wrongly blaming him for the murder, that statement was admitted only for purposes of impeachment and, in any event, nothing in it suggested that defendant assisted Morris in killing Bone.